KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Email: kkaiser@agutah.gov

*Attorneys for Davis County School District, Davis High School, Bryan Bowles, Craig Poll, Dee Burton, Richard Firmage, Kathy Evans, and Scott Nielson*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH GUILDWOLFF,<br><br>                    Plaintiff,<br><br>v.<br><br>DAVIS COUNTY SCHOOL DISTRICT, BOARD OF EDUCATION OF THE DAVIS SCHOOL DISTRICT, BRIANNE LAND ALTICE, BRYAN BOWLES, DEE BURTON, RICHARD FIRMAGE, KATHY EVANS, SCOTT NIELSON, and DOES 1-10.<br><br>                    Defendants.<br><br>And<br><br>ADRIAN PEREZ-TAMAYO, GINA MUSCOLINO, and JOSE PEREZ-TAMAYO,<br><br>                    Plaintiffs,<br><br>v.  [ctd]<br>DAVIS COUNTY SCHOOL DISTRICT, DAVIS HIGH SCHOOL, BRIANNE LAND ALTICE, BRYAN BOWLES, CRAIG POLL, PAMELA PARK, CRAIG CARTER, DEE BURTON, RICHARD FIRMAGE, RYAN BISHOP, CATHY EVANS, DAVE [SCOTT] NIELSON, and DOES 1-10.<br><br>                    Defendants. | **DISTRICT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br><br>Case No. 1:15-cv-0162<br>Case No. 1:15-cv-0157 (consolidated)<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

## TABLE OF CONTENTS

MOTION / INTRODUCTION & RELIEF SOUGHT ................................................................. 1

MEMORANDUM OF LAW ..................................................................................................... 3

    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 3

        Ms. Altice is transferred to Davis High and meets Plaintiffs. ........................................ 3

        Davis High Administration has no concerns and hears nothing putting them          on
notice of any potential harassment by Ms. Altice. ........................................................... 3

        Ms. Altice begins secret romantic and physical relationship with Plaintiffs. ................. 5

        After police receive information about Ms. Altice's relationships with other     students,
she is arrested; Plaintiff Tamayo continues and covers up their relationship. ................. 6

        The two pieces of information given to Davis Administrators did not put them          on
notice of any risks of harm. ............................................................................................. 7

        Davis administration had no knowledge of Plaintiffs' relationships with Ms.      Altice
until after she was arrested. ............................................................................................ 10

        Superintendent Bowles and Assistant Superintendent Poll Were Not Involved. .......... 11

        Plaintiffs file their civil action against the District Defendants and Ms. Altice. .......... 12

LEGAL STANDARD ............................................................................................................. 12

LEGAL ARGUMENT ............................................................................................................ 14

    I.    The District Defendants Did Not Violate Title IX. ................................................. 14

        A.  Introduction to the Title IX Claim. .............................................................. 15

        B.  The Individual Defendants Are Not Proper Defendants to a Title IX      Cause
of Action. .................................................................................................... 16

        C.  Davis County School District Is Entitled to Summary Judgment on
Plaintiffs' Title IX Claims. ......................................................................... 17

            1.  The District Did Not Have "Actual Knowledge" of the Risk of a

        Sexual Relationship Between Ms. Altice and Her Victims. ..................... 18

    2.  The District Was Not Deliberately Indifferent to Any Risks to      Which
        It Was Aware. ........................................................................................ 22

    3.  The Plaintiffs Must Prove They Endured "Severe, Pervasive, and
        Offensive" Sexual Harassment Caused by the District, Over      Which
        the District Had Control.......................................................................... 25

II.   Defendants Did Not Violate Plaintiffs' Civil Rights Under 42 U.S.C. § 1983 ........ 26

    A.  The District Is Not Liable for Sexual Harassment Under the 14th
        Amendment Equal Protection Clause............................................................26

    B.  Individual Defendants Are Not Liable for Sexual Harassment Under      the
        Equal Protection Clause. ..............................................................................28

    C.  School District and District Defendants Are Not Liable for a Fourteenth
        Amendment Due Process Violations..............................................................30

       1.  "Special Relationship" Exception Does Not Apply Because the School
        District Did Not Restrain Plaintiffs' Freedom or Exercise Control over
        Plaintiffs............................................................................................... 30

       2.  The "Danger Creation" Exception Does Not Apply Because They Did Not
        Affirmatively Act to Create a Danger, Did Not Act with Recklessness,
        and No Conscience Shocking Behavior Occurred. ................................... 31

III.  The District Defendants Are Entitled to Summary Judgment on Plaintiffs'
    Common-Law Claims.......................................................................................... 33

    A.  Plaintiffs' State Tort Claims Are Barred Because They Failed to File an
        Undertaking. ..............................................................................................35

    B.  Claims Against the Individual District Defendants Are Barred. ....................36

    C.  Tort Claims Against the District Are Barred. ..................................................38

CONCLUSION....................................................................................... 40

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)........................................................... 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...................................................... 13

*Archuleta v. McShan*, 897 F.2d 495 (10th Cir. 1990) ....................................................... 14

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253 (10th Cir. 1998)........ 31

*B.A.L. ex rel. Stephenson v. Laramie Cnty. Sch. Dist. No. 1*,
   2016 WL 10570871 (D. Wyo. Nov. 30, 2016) ............................................................... 20

*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004) ......................................... 13

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)............................................................ 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 13

*Christiansen v. City of Tulsa*, 332 F.3d 1270 (10th Cir. 2003) .................................... 31, 32

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................................... 32

*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) ........................................... Passim

*DeShaney v. Winnebago County of Dep't of Social Services*,
   489 U.S. 189 (1989) ..................................................................................................... 30

*Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2*,
   2012 WL 4378162, n.2 (D. Colo. Sept. 25, 2012) ...................................................... 19

*Doe v. Bradshaw*, 203 F. Supp. 3d 168 (D. Mass. 2016) ............................................... 20

*Escue v. N. Okla. Coll.*, 450 F.3d 1146 (10th Cir. 2006)............................................ 18, 19, 24, 26

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).................................... 16, 17

*Franklin v. Gwinett Cnty. Pub. Sch.*, 503 U.S. 60 (1992)......................................... 15, 16

*Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ................................ 15, 16, 18, 19, 23

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) .......................................................... 36

*Gray*, 672 F.3d ................................................................................................................. 33

*J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist.*, 397 F.App'x 445 (10th Cir. 2010) ................ Passim

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ...................................................... 27

*Johnson v. Indep. Sch. Dist No. 3*, 2018 WL 1732070 (W.D. Okla. Apr. 10, 2018) ...................... 20

*Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995) ............................................................ 29, 33

*Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716 (6th Cir. 1996) ................................. 33

*Livsey v. Salt Lake Cnty.*, 275 F.3d 952 (10th Cir. 2001) ............................................... 32

*Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253 (10th Cir. 1996) ................. 32

*Martinez v. Uphoff*, 265 F. 3d 1130 (10th Cir. 2001) ..................................................... 32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................... 13

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ......................... 27

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238 (10th Cir. 1999) ........................ Passim

*Neal v. Colo. St. Univ.-Pueblo*, 2017 WL 633045 (D. Colo. Feb. 16, 2017) ......................... 17

*Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356 (6th Cir. 2012) .................................... 26

*R.L.R. v. Prague Pub. Sch. Dist. I-103*, 838 F. Supp. 1526 (W.D. Okla. 1993) .................... 14

*Rippstein v. City of Provo*, 929 F.2d 576 (10th Cir. 1991) ............................................ 35, 36

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ................................................... 30

*Ross v. Univ. of Tulsa*, 859 F.3d 1280 (10th Cir. 2017) ................................................. 19

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
  511 F.3d 1114 (10th Cir. 2008) ............................................................................... Passim

*Rost*, 511 F.3d 1125.................................................................................................. 25, 28

*Ruiz*, 299 F.3d 1173 (10th Cir. 2002).................................................................... 32

*Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052 (D.N.M. 2010)......................... 17, 31

*Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) ........................................................ 13

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995)...................................................... 30, 31

## State Cases

*Barneck v. Utah Dep't of Transp.*, 2015 UT 50, 353 P.3d 140........................................ 38

*Craig v. Provo City*, 2016 UT 40, 389 P.3d 423....................................................... 36

*DeBry v. Noble*, 889 P.2d 428 (Utah 1995) ........................................................... 34

*Hansen v. Salt Lake Cnty.*, 794 P.2d 838 (Utah 1990)................................................ 35, 36

*Larsen v. Davis Cnty. Sch. Dist.*, 2017 UT App 221, 409 P.3d 114.................................. 38, 39, 40

*Mecham v. Frazier*, 2008 UT 60, 193 P.3d 630 ...................................................... 37

*Mitchell v. Pearson Enters.*, 697 P.2d 240 (Utah 1985) ............................................ 38

*Salo v. Tyler*, 2018 UT 7, 417 P.3d 581............................................................. 35, 37

*Shunk v. State*, 924 P.2d 879 (Utah 1996) .......................................................... 34

*Taylor ex. rel Taylor v. Odgen City Sch. Dist.*,   959 P.2d 159 (Utah 1996) (Utah 1996).............. 39

## Federal Statutes

20 U.S.C. § 1681 .................................................................................... 14, 15, 17

20 U.S.C. § 1682 .................................................................................... 15, 18

42 U.S.C. § 1983 ....................................................................................Passim

**State Statutes**

Utah Code Ann. § 63G-7-101 (2013) ........................................................................ 34

Utah Code Title 63G, Chapter 7 .............................................................................. 34

Utah Code § 63G-7-102(10) ................................................................................... 37

Utah Code § 63G-7-104(4) ..................................................................................... 34

Utah Code § 63G-7-202(3)(a) ...................................................................... 34, 35, 37

Utah Code § 63G-7-202(3)(c)(i) .............................................................................. 37

Utah Code § 63G-7-301(4) ..................................................................................... 38

Utah Code § 63G-7-301(5)(b) ................................................................................. 38

Utah Code § 63G-7-403(3) ..................................................................................... 36

Utah Code § 63G-7-601(2) ..................................................................................... 35

Utah Code § 68-3-3 ............................................................................................... 36

Utah Code §§ 63G-7-102(2)(a) ............................................................................... 34

**Federal Rules**

Fed. R. Civ. P. 56(c)(1)(A) ...................................................................................... 13

Federal Rule of Civil Procedure 56 ............................................................................ 1

**Other Authorities**

*Doe No. 1 v. Boulder Valley Sch. Dist. No. RE-2*,
    2012 WL 43788162, at *1, 11 (D. Colo. Sept. 25, 2012) (D. Colo. Sept. 25, 2012) .................. 20

H.B. 399 .............................................................................................................. 36

## MOTION / INTRODUCTION & RELIEF SOUGHT

Defendants Davis County School District, Davis High School, Bryan Bowles, Craig Poll, Dee Burton, Richard Firmage, Kathy Evans, and Scott Nielson (the "District Defendants") by and through counsel, Kyle J. Kaiser, Assistant Utah Attorney General, and pursuant to Federal Rule of Civil Procedure 56 and DUCivR 56-1, move for summary judgment on all claims against them in the Amended Complaint filed by Plaintiff Joseph Guild-Wolff (Doc. 6 in case '162) and the Complaint filed by Adrian Perez-Tamayo, Gina Muscolino, and Jose Perez-Tamayo ("Tamayo") (Doc. 2 in case '157). The bases of the motion include:

1.  The District Defendants are entitled to summary judgment on Plaintiffs' Title IX claims because

    a.  The District Defendants had no knowledge, and thus could not have been deliberately indifferent to, any sexual harassment of Plaintiffs by Brianne Altice;

    b.  The District Defendants took reasonable and timely action in response to the complaints made and information provided them; and

    c.  Plaintiffs cannot prove that any District actions caused severe, pervasive, and unreasonable harassment.

2.  The District Defendants are entitled to summary judgment on Plaintiffs' Due Process and Equal Protection Claims, because

    a.  The District did not have any policy or custom which caused Plaintiffs to be subjected to harassment;

    b.  The Individual District Defendants were not deliberately indifferent to any harassment of the Plaintiffs creating liability under the Equal Protection Clause;

1

    c.   The District Defendants did not create a "special relationship" with Plaintiffs or otherwise restrict their freedom; and

    d.   The District Defendants did not create any danger to which Plaintiffs were subjected, did not act with recklessness, and did not engage in conscience-shocking behavior.

3.    The District Defendants are entitled to summary judgment on Plaintiffs' common-law claims because

    a.   Plaintiffs did not file an undertaking bond with the Court, and thus their claim must be dismissed as required by the Governmental Immunity Act of Utah;

    b.   Under the Governmental Immunity Act of Utah, a governmental entity, its officers, and its employees are immune from claims arising out of an assault or battery, and the improper sexual conduct between Ms. Altice and Plaintiffs constitutes an "assault" or "battery" for the purposes of the GIAU, notwithstanding Plaintiffs' potential factual consent to the actions;

    c.   The Individual District Defendants cannot be liable for negligence, as the GIAU's sole remedy for their claims is against the district; and

    d.   Plaintiffs have not pleaded or proved any "willful misconduct" subjecting the Individual District Defendants to liability.

For these reasons, as more fully described in the Memorandum of Law attached hereto, the District Defendants request the Court grant their motion and dismiss all claims in both Complaints with prejudice.

<u>**MEMORANDUM OF LAW**</u>

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

*Ms. Altice is transferred to Davis High and meets Plaintiffs.*

1.      Brianne Altice was a teacher in the Davis School District.   She began her career as a full-time teacher at Sunset Junior High in 2011.[1]  Because of a drop in enrollment at Sunset, Ms. Altice was transferred to Davis High School for the 2012-2013 school year.[2]   At that time, Dee Burton was the principal of Davis High, and he was assisted by three assistant principals—Richard Firmage, Scott Nielson, and Kathy Evans.[3]  Sunset Junior High administrators assured the administrators of Davis High of Ms. Altice's competency, and no one at Davis High knew or heard of any concerns, or rumors, about Ms. Altice.[4]

2.      Ms. Altice began teaching English at Davis High in the 2012-2013 school year.[5]

3.      Plaintiffs Joseph Guild-Wolff and Adrian Perez-Tamayo were both students of Ms. Altice's that year.[6]

*Davis High Administration has no concerns and hears nothing putting them on notice of any potential harassment by Ms. Altice.*

4.      Principal Burton performed three observations of Ms. Altice during that year and noted Ms. Altice's progressive improvement in teaching.[7]  He also observed Ms. Altice to act

---

[1]  Decl. of Brianne Altice, ("Altice Decl.") App'x Ex. 1, ¶ 4.
[2]  Decl. of Dee Burton, ("Burton Decl.") App'x Ex. 2, ¶ 5.
[3]  Burton Decl. ¶ 4, 5; Decl. of Richard Firmage, ("Firmage Decl.") App'x Ex. 3, ¶ 3; Decl. of Scott Nielson, ("Nielson Decl.") App'x Ex. 4, ¶ 3; Decl. of Kathy Evans, ("Evans Decl.") App'x Ex. 5, ¶ 3.
[4]  Burton Decl. ¶ 5.
[5]  Altice Decl. ¶ 7.
[6]  Altice Decl. ¶ 11; Dep. of Adrian Perez-Tamayo ("Tamayo Dep."), App'x Ex. 9 at 46:24–47:2.
[7]  Burton Decl. ¶ 6.

appropriately and be appropriately dressed and never received any complaints about Ms. Altice's attire or improper relationships with students.[8]   Principal Burton was not made aware of any complaints against Ms. Altice that students were in Ms. Altice's classroom outside their normal schedule.[9]   Likewise, Assistant Principal Evans received no complaints about Ms. Altice's conduct and observed nothing out of the ordinary with Ms. Altice's classroom.[10]   Plaintiffs' friends, who perceived a "flirting" relationship between Plaintiffs and Ms. Altice, did not report their perceptions to administration.[11]

     5.     Administrators could see into Ms. Altice's room through unobstructed four-foot-by-six-foot windows.[12]   None of the school administrators noticed anything out of the ordinary in Ms. Altice's room.[13]

     6.     Ms. Evans and Mr. Firmage both had significant interaction with the student body during the time Plaintiffs were students.   Mr. Firmage was the assistant principal primarily responsible for student discipline and repeatedly encountered Plaintiffs in that role.[14]   He would also frequently walk the halls and join students on the "stoop"—a popular hangout location for students in the central part of the building.[15]   While he walked the halls or visited the students on the stoop, he never heard any rumors from the students, staff, or faculty about Ms. Altice having any inappropriate relationships with any students, nor any other rumors that would raise

---

[8] *Id*. at ¶ 7.
[9] *Id*. at ¶¶ 18–19
[10] Evans Decl. ¶ 6.
[11] Dep. of Cassadi Loyola, ("Loyola Dep."), App'x Ex. 11, at 24:1–24.
[12] Altice Decl. ¶¶ 8–10
[13] Firmage Decl. ¶ 10.
[14] *Id*. at ¶¶ 6–7.
[15] *Id*. at ¶¶ 8–9.

any red flags about any inappropriate relationships.[16]   Ms. Evans' son attended Davis High

during the relevant time, and would keep Ms. Evans apprised of rumors floating around the

school.   She never heard any rumors that Ms. Altice was being inappropriate with a student,

from her son or any other source.[17]

***Ms. Altice begins secret romantic and physical relationship with Plaintiffs.***

7.      In the 2012-2013 school year, which was Plaintiffs' Junior year of high school,

Ms. Altice befriended both Plaintiffs.[18] When Plaintiff Guild-Wolff returned to Davis High from

a juvenile facility, he requested, and was allowed, to be Ms. Altice's "Teaching Assistant."   He

displayed an interest in Ms. Altice, and she returned it.[19]

8.      Ms. Altice had sexual intercourse with Plaintiff Guild-Wolff on one occasion, at

Plaintiff's home on June 6, 2013.   The interactions and communications between the two of

them abruptly ended after that.[20]

9.      Ms. Altice's familiar, and eventually intimate, relationship with Plaintiff Tamayo

did not begin until he was no longer Ms. Altice's student.[21]   Over the summer after the 2012-

2013 school year, Plaintiff Tamayo contacted Ms. Altice and requested that he meet her in a

local park to provide help with a family conflict.[22]   They met at the park, talked, and parted

---

[16] *Id.* at ¶ 10.
[17] Evans Decl. ¶ 15.
[18] Altice Decl. ¶ 12, Tamayo Dep. 46:24–47:14.
[19] Altice Decl. ¶¶ 13–15; Dep. of Joseph Guild-Wolff ("Guild-Wolff Dep."), App'x Ex. 8, at 30:1:31–21.
[20] Altice Decl. ¶¶ 20–22; Guild-Wolff Dep. 63:9–64:2, 180:3–17.
[21] Tamayo Dep. 63:4–16.
[22] Altice Decl. ¶¶ 23–24.

ways.[23]   During the 2013-2014 school year, Ms. Altice indulged in a relationship with Plaintiff

Tamayo, which became physical around the beginning of October 2013.[24]

      10.     Ms. Altice kept her relationships with both Plaintiffs secret and separate from

school. Neither Plaintiff engaged in sexual intercourse or sexual contact with Ms. Altice at

school or on school grounds.[25]   Ms. Altice did not discuss her interactions with the Plaintiffs on

school property and did not discuss the interactions with anyone else.[26]   In fact, Plaintiffs and

Ms. Altice used various cellphone apps to mask telephone numbers and protect their text

communications.[27]   And Plaintiff Tamayo destroyed all documents relating to his relationship

with Ms. Altice, which were stored under a pseudonym on his computer.[28] No one saw any

sexual contact between Plaintiffs and Ms. Altice.[29]

***After police receive information about Ms. Altice's relationships with other students, she is
arrested; Plaintiff Tamayo continues and covers up their relationship.***

      11.     After an investigation was completed by Kaysville police, Ms. Altice was arrested

on the night of October 28, 2013 and immediately placed on administrative leave.[30]

      12.     However, Ms. Altice and Plaintiff Tamayo continued their relationship after Ms.

---

[23] Altice Decl. ¶ 26; Tamayo Dep. 64:3–8.

[24] Altice Decl. ¶ 26; Tamayo Dep. 62:4–23.

[25] Pl. Tamayo's Resp. to Def's Discovery ("Tamayo RFA"), App'x Ex. 12, Nos. 5, 6, 10, 11; Pl. Guild-Wolff's Resp. To Def's Discovery ("Guild-Wolff RFA"), App'x Ex. 13, Nos. 5, 6, 10, 11; These admissions have been deemed admitted as a discovery sanction. *See*, Ord. on Defs.' Short Form Discovery Mot. to Compel (Doc. 60) at 4-5; Altice Decl. ¶¶ 16, 35, 38–40; Tamayo Dep. 75:20–76:5.

[26] Altice Decl. ¶¶ 17, 36–37; Tamayo Dep. 79:8–12.

[27] Altice Decl. ¶ 18–19, 33; Tamayo Dep. 56:20–57:12, 74:6–74:9.

[28] Tamayo Dep. 15:1–17:12.

[29] Tamayo Dep. 74:6–74:9; Altice Decl. ¶¶ 20–21.

[30] *E.g.*, Statement of Dee Burton ("Burton Statement") App'x Ex. 14, State Def. Initial Discl. at 000127.

Altice was released on bail.[31]   Plaintiff Tamayo continued to hide his relationship and influence

others not to speak about their encounters with Ms. Altice.[32] Plaintiff Tamayo was charged with

tampering with a witness and retaliation against a witness, victim or informant, in violation of

Utah law, because he attempted to persuade another male student to lie about not having sexual

conduct or sexual intercourse with Ms. Altice and, because he lied to investigators about his

relationship.[33] Even after he agreed to testify against Ms. Altice, he continued to lie about the

nature and scope of his relationship with her.[34] It was not until he initiated the lawsuit that

Plaintiff Tamayo told the truth about the full extent of the relationship he had with Ms. Altice.[35]

***The two pieces of information given to Davis Administrators did not put them on notice of any
risks of harm.***

13.     School administrators did not know about the relationships until Ms. Altice's

criminal case had been prosecuted.[36] Their only knowledge of aberrant behavior by Ms. Altice

came in the summer of 2013, and in October 2013, a few days before Ms. Altice was arrested.[37]

14.     An anonymous individual had taken photos of Ms. Altice in the park with

Plaintiff Tamayo and forwarded four of the photos, on an electronic flash drive, to Davis High

administration, along with a complaint that the photos showed Ms. Altice engaging in potentially

inappropriate behavior with a student.[38] Assistant Principal Evans took possession of the drive

---

[31] Altice Decl. ¶¶ 41–42; Tamayo Dep. 90:21–92:8.
[32] *E.g.* Tamayo Dep. 73:5–17.
[33] *Id.*; *see also id.* at 86:9–12, 98:6–24; Tamayo RFA 18, 19.
[34] Tamayo Dep. 154:10–158:2.
[35] Tamayo Dep. 160:2–18.
[36] *E.g.,* Decl. of Bryan Bowles ("Bowles Decl.") App'x Ex. 6, ¶¶ 6-7; Decl. of Craig Poll ("Poll Decl.") App'x Ex. 7, ¶¶ 5-8; Evans Decl. ¶¶ 7-17; Tamayo Dep. 67:10–70:4.
[37] *E.g.* Burton Decl. ¶¶ 9, 10; Evans Decl. ¶ 17.
[38] Burton Decl. ¶ 10, Firmage Decl. ¶ 11.

and forwarded the photos to Principal Burton.[39]

15.     Once Principal Burton had been made aware of the content of the photos, he
immediately summoned Tim Barlow, the School Resource Officer, to consult. Barlow, Principal
Burton, and the Assistant Principals reviewed the photos.[40]

16.     The photos showed Ms. Altice, on a blanket, having lunch with Plaintiff Tamayo
in a public park.[41]   The photos did not show any sexual or intimate physical contact.[42] SRO
Barlow determined that the photos did not depict any criminal behavior, but may have
demonstrated a lapse in judgment.[43] Thus, even though the event occurred outside of school
hours (and outside the school year) and off school grounds, as a precaution, Principal Burton
decided to meet with Ms. Altice about the event.[44]

17.     The week before school started, Mr. Burton, Mr. Firmage, and Ms. Evans met
with Ms. Altice to discuss the photos.[45]

18.     Ms. Altice told the administration that Plaintiff Tamayo reached out to her to talk
because he was having family problems and needed help in dealing with them.[46] Ms. Altice told
them that nothing happened at the meeting.[47]

19.     Principal Burton told Ms. Altice that this interaction was not acceptable.   The

---

[39] Evans Decl. ¶ 8.
[40] Burton Decl. ¶¶ 11–12; Evans Decl. ¶ 9; Firmage Decl. ¶ 13.
[41] Burton Decl. ¶ 1; South Weber Park Photos, Ex. 22.
[42] Firmage Decl. ¶ 12; South Weber Park Photos, Ex. 22.
[43] Burton Decl. ¶ 13; Firmage Decl. ¶ 12.
[44] Burton Decl. ¶ 14; Burton Statement, Initial Discl. 000127; Evans Decl. ¶ 9.
[45] Altice Decl. ¶ 27; Burton Decl. ¶ 15; Evans Decl. ¶ 10.
[46] Burton Decl. ¶ 15; Altice Decl. ¶ 29; Evans Decl. ¶ 10; Firmage Decl. ¶ 13.
[47] Altice Decl. ¶ 29.

administration told Ms. Altice that events in the pictures blurred the line in the student/teacher relationship and could be seen as inappropriate.[48] Ms. Altice was advised that she could only counsel students in her classroom, in appropriate hours, with the door open and lights on.[49] Ms. Altice, who seemed shocked, mortified, and remorseful over the pictures and her conduct, sincerely committed that she would not go to the park again.[50]

20.     Because the photos showed no illegal conduct, as determined by a police officer, because Ms. Altice had a reasonable explanation for the interaction, and because she appeared genuinely remorseful for the lapse in judgment outside of school, Principal Burton determined that no further sanction or investigation was necessary or appropriate at that time.[51]

21.     In October 2013, Davis High administration became aware that Maleya Shaw, a junior at Davis High School, "had evidence Ms. Altice was having a relationship with Joey Guild-Wolff."   On October 16, 2013, Principal Burton heard from Chris Shaw, the grandmother of Maleya Shaw.   The grandmother told Principal Burton that Maleya had knowledge that Ms. Altice had sexual intercourse with Joey Guild-Wolf and that Maleya had text messages proving the encounter.[52] The Davis administrators immediately called the school district's student resource officer.[53]

22.     Officer Barlow, Assistant Principal Firmage, and Assistant Principal Nielson interviewed Maleya and Cassadi Loyola, another student who also allegedly had access to the

---

[48]  Burton Statement, Initial Discl. 000127; Evans Decl. ¶ 11.
[49]  Altice Decl. ¶ 30; Burton Decl. ¶ 17.
[50]  Burton Statement, Initial Discl. 000127; Evans Decl. ¶ 12; Firmage Decl. ¶ 14.
[51]  Burton Decl. ¶ 17; Evans Decl. ¶ 13.
[52]  Burton Statement, State Def Initial Disc 000127.
[53]  *Id.*; Firmage Decl. ¶ 17.

text messages.   Ms. Loyola denied the allegations, while Maleya refused to provide a statement and did not show the assistant principals any text message.[54]  Plaintiff Guild-Wolff earlier confided in them that he had sex with Ms. Altice, but he urged them not to tell anyone.[55]

23.     The week of the report coincided with the Utah Education Association's (UEA) annual convention.   School is traditionally not in session during the two-day convention, and Ms. Shaw was removed from school for nearly a week for a trip to Hawaii.[56] With no written statements at that time, one dissenting party, and the primary witness away from school, the administrators could not take the internal investigation any further.[57] The school officials turned everything they had over to law enforcement at that time.[58]

24.     By the time she returned to school, school administration had already been made aware of a subsequent investigation being done against Ms. Altice involving a student from another area high school.   SRO Barlow contacted Principal Burton around October 28, 2013 to notify him that the police had evidence against Ms. Altice and that she needed to be placed on administrative suspension pending investigation.[59]

25.     Principal Burton arranged for a substitute for Ms. Altice and communicated with Ms. Altice that she was on administrative suspension, just shortly before she was arrested.[60]

***Davis administration had no knowledge of Plaintiffs' relationships with Ms. Altice until after she was arrested.***

---

[54]  Firmage Decl. ¶¶ 18–21; Nielson Decl. ¶¶ 7–8; Loyola Dep. 36:21–38:2.
[55]  Guild-Wolff Dep. 96:9–97:1.
[56]  Firmage Decl. ¶ 22.
[57]  Firmage Decl. ¶ 23; Nielson Decl. ¶ 10.
[58]  Nielson Decl. ¶ 11.
[59]  Burton Decl. ¶¶ 26–28; Burton Statement, State Def Initial Discl. 000127.
[60]  Burton Decl. ¶ 29; Burton Statement, State Def Initial Discl. 000127.

26.     After Ms. Altice was arrested, Plaintiffs got in a fight at school. Mr. Firmage was called to respond to the fight.   By the time he got there, Plaintiff Tamayo was gone and only Plaintiff Guild-Wolff was there.   Mr. Firmage took Plaintiff Guild-Wolff back to his office to give him some ice. While in the office, Plaintiff Guild-Wolff, in tears, admitted that he had had sex with Ms. Altice as well.   That was the first time anyone in the Davis High Administration had any solid confirmation that Plaintiff Guild-Wolff had a relationship with Ms. Altice.[61]

27.     Plaintiff Tamayo told no one about his sexual encounters with Ms. Altice until after she was arrested, but he only told his father.   Plaintiff Tamayo never admitted his relationship to anyone at the school.   No one reported the relationship to the District.[62]

***Superintendent Bowles and Assistant Superintendent Poll Were Not Involved.***

28.     At the time of the events, Dr. Bryan Bowles was Superintendent of the Davis County School District.[63] He had no knowledge of the allegations against Ms. Altice, no direct contact with Ms. Altice, nor any direct responsibilities over the day-to-day administration of Davis High School.[64] His only role was to oversee the disciplinary action of her termination from an executive level as the Superintendent.[65]

29.     At the time of the events, Craig Poll was Assistant Superintendent for Davis County School District, overseeing Human Resources for the District.[66] He had no

---

[61] Firmage Decl. ¶¶ 27–27; Guild-Wolff Dep. 86:22–87:11, 98:3–104:16; Guild-Wolff RFA 16.
[62] *E.g.*, Tamayo Dep. 76:6-76:9; Dep. of Dr. Gina Muscolino ("Muscolino Dep.") App'x Ex. 10, at 56:25–60:17.
[63] Bowles Decl. ¶ 3.
[64] *Id.* ¶¶ 4–5.
[65] *Id.* ¶ 5.
[66] Poll Decl. ¶ 3.

responsibilities over the day-to-day administration of Davis High or Ms. Altice.   His sole

responsibility was to approve the suspension of Ms. Altice after her arrest.[67]

***Plaintiffs file their civil action against the District Defendants and Ms. Altice.***

30.     As required by the Governmental Immunity Act of Utah, both Plaintiffs provided

Notices of Claim to the government.[68]   Plaintiff Tamayo filed his Notice of Claim on April 8,

2015, and Plaintiff Guild-Wolff filed his notice of claim on October 27, 2014, with an amended

notice sent on December 24, 2015.  [69]

31.     Plaintiff Tamayo filed his action against the District Defendants on December 15,

2015.[70]   Plaintiff Guild-Wolff filed his action against the District Defendants and Ms. Altice on

December 28, 2015.[71]

32.     At the time this suit was filed, both plaintiffs were over 18 years of age.[72]

33.     Neither Plaintiff filed, or sought to file, an undertaking bond with the Court.[73]

## LEGAL STANDARD

Summary judgment is appropriate against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case on which that party will bear

the burden of proof at trial.   In such a situation, there can be no issue of material fact because a

failure of proof on an essential element of the non-moving party's case necessarily renders all

other facts immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

---

[67] Poll Decl. ¶¶ 4–7.
[68] Tamayo Notice of Claim, App'x Ex. 16, at 1.
[69] Guild-Wolff Notice of Claim, App'x Ex. 15, at 1.
[70] Compl. (doc. 2, case '157).
[71] *See* Compl. (doc. 1, case '162).
[72] Tamayo RFA 1; Guild-Wolff RFA 1.
[73] *See generally* Docket Sheet, Case '157, Docket Sheet, Case '162.

To defeat a motion for summary judgment, Plaintiffs cannot merely rest on the allegations contained in their Complaint.   Instead, Plaintiffs must, by "citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial.   Fed. R. Civ. P. 56(c)(1)(A); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   A party cannot manufacture an issue for trial with unsubstantiated allegations. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also Anderson,* 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."). "To defeat summary judgment, plaintiffs must support their claim with more than conjecture and speculation." *Self v. Crum,* 439 F.3d 1227, 1236 (10th Cir. 2006).

Moreover, when a defendant moves for summary judgment, he is not required to present evidence supporting the defendant's theory of the case.   The defendant need only demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.     Then, the burden shifts to the plaintiff, who "must present affirmative evidence in order to defeat the defendant's properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257.     The plaintiff's evidence "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matasushita,* 475 U.S. at 586.     Where the record taken as a whole could not lead a rational trier of fact could to "find for the non-moving party, there is no genuine issue for trial."     *Id.* at 587 (citations and quotations omitted).

## LEGAL ARGUMENT[74]

**I.     The District Defendants Did Not Violate Title IX.**

Tamayo's Sixth Cause of Action,[75] and Guild-Wolff's First Cause of Action[76] each allege a claim for damages for sexual harassment under 20 U.S.C. § 1681, part of Title IX of the Education Amendments Act of 1972, P.L. 92-318, 86 Stat. 235, 373 (1972), *codified as amended at* 20 U.S.C. § 1681–86.

Defendants are entitled to judgment as a matter of law on Plaintiffs' Title IX claims. First, Plaintiff Tamayo's claims against the Individual Defendants must be dismissed, because Title IX does not a provide a right of action against District employees. Second, Plaintiffs lack evidence on nearly every element of the Title IX harassment cause of action against the District. Therefore, the School District Defendants are entitled to summary judgment.

---

[74] Adrian Perez-Tamayo's parents are included as Plaintiffs in the Tamayo Complaint.   (*See* Compl. (doc. 2, case '157) ¶¶ 2–3.)   However, they have no claim against any of the Defendants. Adrian was over 18 when the lawsuit was filed, and therefore, they are not included in a presentative capacity. *See* Tamayo RFA 1; Guild-Wolff RFA 1. And they do not advance any claims of their own.   First, "[n]on-students have no claim under Title IX."  *R.L.R. v. Prague Pub. Sch. Dist. I-103,* 838 F. Supp. 1526, 1530 (W.D. Okla. 1993).   Therefore, they cannot bring a Title IX claim for their own damages. Next, "a section 1983 claim must be based on the violation of plaintiff's personal rights, and not the rights of someone else."  *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir. 1990).   Rather, Plaintiff Jose Perez-Tamayo and Plaintiff Gina Muscolino must show they "personally suffered any deprivation of a constitutional right possessed by [them] individually." *Id.*   Because they suffered no personal deprivation, they therefore cannot bring an equal protection, due process, or other constitutional claim through § 1983.   *Cf.* Muscolino Dep. 80:13–81:20 (describing alleged discrimination by the District against Ms. Muscolino as not being informed about the pictures in the park over the summer). Finally, they have not alleged any *individual* tort claims against the District Defendants.   To the extent the Tamayo Plaintiffs allege some claims other than those asserted by Adrian, they must be dismissed.

[75] Compl. (doc. 2, case '157) at 14.

[76] Compl. (doc. 6, case '162) at 8.

### A.  Introduction to the Title IX Claim.

The relevant portion of Title IX provides:

*No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ….*

20 U.S.C. § 1681. The text of Title IX does not provide a remedy for private citizens to seek damages for its violation. Congress wrote the Act to be enforced primarily via administrative action. *See* 20 U.S.C. § 1682 (providing that federal agencies charged with administering federal educational benefits are "authorized and directed to effectuate" § 1681); *see also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 638–39 (1999).

Notwithstanding the lack of an explicit right of individuals to sue for a Title IX discrimination violation, the Supreme Court subsequently recognized an implied, private right of action under Title IX. *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979) (allowing a suit for injunctive relief); *Franklin v. Gwinett Cnty. Pub. Sch.*, 503 U.S. 60, 78 (1992) (allowing a suit for damages based on sexual harassment by a district employee); *Gebster v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286 (1998) (defining the limits of the damages right).   "[S]exual harassment," including certain sexual encounters between students and teachers, may constitute "discrimination in the school context under Title IX." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *Gebster*, 524 U.S. at 281. Because the Court has been cognizant of the need to ensure that Title IX liability is imposed in fashion with the overall purpose and structure of the Act, it has limited the private right of action in a number of respects. *See Gebster*, 524 U.S. at 284–92.

First, only "education program[s] or activit[ies] receiving Federal financial assistance,"

(i.e. school districts) may be sued for a Title IX violation; individuals may not be. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). (Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals ….").

Second, the Court has prevented Title IX plaintiffs from recovering from a school district "for a teacher's sexual harassment of a student based on principals of respondeat superior or constructive notice, i.e., without actual notice to a school district official." *Gebster*, 524 U.S. at 285, 287–88.

Third, a cause of action exists only for the district's *deliberate indifference* to a *known risk of harm*; negligence is insufficient. *Gebster*, 524 U.S. at 290–91; *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992). Furthermore, the private right of action exists only if an "appropriate person" has knowledge of the behavior and fails to remediate it. Therefore, "even if every teacher at the school knew about the harassment," *Gebster*, 524 U.S. at 301 (Stevens, J., dissenting), the district is not liable unless a school official "with authority to take corrective action to end the discrimination" knows, and deliberately disregards, the discrimination. *Id.* at 290.

With these limitations in mind, the District Defendants are entitled to summary judgment on Plaintiffs' Title IX claims.   The Individual Defendants cannot be liable under Title IX, and the District is not liable because it was not deliberately indifferent to a known risk of actual harassment by Ms. Altice.

### B. The Individual Defendants Are Not Proper Defendants to a Title IX Cause of Action.

Plaintiff Tamayo seeks to bring his Title IX claims against "Davis County School

District, Super Intendant [sic], Principals, Assistant Principals"[77] Title IX claims must be dismissed against these defendants because they are not proper parties.

Title IX applies only to "education program[s] or activit[ies] receiving Federal financial assistance." 20 U.S.C § 1681.   The Supreme Court has noted that Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals ….". *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). Accordingly, Plaintiff Tamayo's Title IX claim against the individual defendants must be dismissed. *Id.*; *see also Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1068 (D.N.M. 2010) ("[T]itle IX does not authorize a cause of action against individuals; rather, it creates a right enforceable against educational institutions only").[78]

### C. *Davis County School District Is Entitled to Summary Judgment on Plaintiffs' Title IX Claims.*

Applying the Supreme Court's limitations on the Title IX cause of action described above, the Tenth Circuit has set forth four elements which a plaintiff must satisfy to prove a claim of Title IX harassment against a school district:

> (1) [the school district had][79] actual knowledge of, and (2) was deliberately indifferent to, (3) harassment that was so severe, pervasive, and offensive that it, (4) deprived the victim of access to the educational benefits or opportunities provided by the school.

---

[77] Compl. (case '157) (doc. 2) at 14.

[78] Plaintiff Tamayo has not asserted whether he has sued the Individual Defendants in their official or individual capacities.   But regardless, the case should be dismissed. *E.g.*, *Neal v. Colo. St. Univ.-Pueblo*, No. 16-CV-873-RM-CBS, 2017 WL 633045, at *8 (D. Colo. Feb. 16, 2017) (recommendation not selected for publication) (recommending dismissal of Title IX claim against individual administrators, regardless of whether the claim was made against them in their individual or official capacities).

[79] The school district's receipt of federal funds is a threshold condition of Title IX liability.   *See, e.g.*, *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008).   The District does not dispute that it has received federal funds.

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).   Because Plaintiffs cannot put forth evidence to show they meet the first three the elements of the claim, summary judgment must be granted.[80]

### 1. The District Did Not Have "Actual Knowledge" of the Risk of a Sexual Relationship Between Ms. Altice and Her Victims.

Plaintiffs' claims fail because the District did not have actual knowledge of the sexual relationship (the basis for the claim of harassment) between Ms. Altice and the students until immediately before Ms. Altice was arrested on October 28, 2013.

District liability only exists if the district actual had knowledge of harassing behavior severe enough to constitute a hostile educational environment. *See Davis*, 526 U.S. at 641; *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006). Because schools are not held liable for harassment that it "should have known about . . .but failed to uncover," reports of eye-raising behavior by the teacher are insufficient. *Gebster*, 524 U.S. at 282. The type of behavior that might put an administrator arguably on inquiry notice does meet the threshold of actual knowledge. Similarly, information that was "stale" or different in nature or severity than the harassment ultimately suffered by the plaintiff is also insufficient. *See, J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist.,* 397 F.App'x 445, 450–451 (10th Cir. 2010) (Ord. & J. not selected for publication).

Furthermore, the District's "actual knowledge" must be held by an "appropriate person" employed by the district. 20 U.S.C. § 1682; *Gebster*, 524 U.S. at 290. An "appropriate person" is

---

[80] The District Defendants reserve the right to challenge Plaintiffs' burden of proof on all four elements if this motion is denied.

"a school official who has the authority to halt known abuse." *Murrell*, 186 F.3d at 1247. The

Tenth Circuit has refused "simply to name job titles that would or would not adequately satisfy

this requirement …." *Id.* In general, though, school principals are generally encompassed. *Id.*

And other district courts have included assistant principals within this definition. *See Doe No. 1*

*v. Boulder Valley Sch. Dist. No. Re-2*, No. 11-CV-02107-PAB-KLM, 2012 WL 4378162, at *4,

n.2 (D. Colo. Sept. 25, 2012) (ord. not selected for publication) *aff'd,* 523 F. App'x 514 (10th Cir.

2013). But "appropriate persons" do not include teachers who engaged in the harassment, other

staff or students at the school, or even individuals appointed by the educational institution to

receive Title IX complaints.   *Id.*; *see also Gebster*, 524 U.S. at 291; *Ross v. Univ. of Tulsa*, 859

F.3d 1280, 1289–92 (10th Cir. 2017).

      The U.S. Supreme Court, the Tenth Circuit, and district courts from around the country,

have elucidated the metes and bounds of the "actual notice" requirement.   For example, courts

have determined that the following facts, known by "appropriate persons," were insufficient as a

matter of law to support a Title IX harassment claim:

- The school principal's knowledge of a teacher's reported "inappropriate" (including sexual) comments made during class and discussion sessions was "plainly insufficient" to support a claim based on a high school teacher engaging in illegal sexual contact with a student in the class.  *Gebster*, 524 U.S. at 291.
- A college's knowledge that a professor had (consensually) dated a student 10 years earlier, had recently called a female student "butch," and recently been accused of a single incident of inappropriate touching of a student's buttocks was not "anywhere near the degree of overt and pervasive harassment" to support a claim of sexual harassment by a college student against the professor.  *Escue*, 450 F.3d at 1149, 1154.
- The report of a victim that boys were "bothering her" and that she did not want to attend a class anymore was insufficient to put the district on notice of student-on-student harassment. *Rost ex rel. K.C. v. Stamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119–20 (10th Cir. 2008).
- A school district's knowledge that a male teacher, in a previous position, had coerced a minor student into giving him her phone number, made unsolicited calls in person and on the phone to the student, and made her feel uncomfortable, was "too infrequent" to show

a propensity to commit sexual harassment.  *Doe No. 1 v. Boulder Valley Sch. Dist. No. RE-2*, 2012 WL 43788162, at *1, 11 (D. Colo. Sept. 25, 2012) (ord. not selected for publication).

- A report to school officials that a teacher bought alcohol for a minor, generalized student rumors that "everybody knew" that the teacher was dating a student, and a report of another teacher that the teacher was engaged in an "inappropriate relationship" with a student was insufficient to support a claim based on sexual assault of a student.  *Doe v. Bradshaw*, 203 F. Supp. 3d 168, 173–74, 185–86 (D. Mass. 2016).

Conversely, courts have determined that the following allegations, alleged to be known by "appropriate persons," were sufficient as a matter of law to support a Title IX harassment claim:

- A report that a teacher was seen in a motel room behind a closed door with a student, and when the door was open, the student was found lying on the bed, and that the teacher was known to be a pedophile, to support harassment claim based on illegal sexual contact between the minor and the teacher.  *Morris* 397 F. App'x at 452–53.
- A complaint by the teacher's spouse that the teacher was having an inappropriate relationship with a minor, discovery of the teacher with a minor in a hotel room on a school trip and alone at lunch, and an observation by parents and school officials that the teacher was acting inappropriately with a minor an another trip, to support a claim of harassment based on illegal sexual contact between the minor and the teacher.  *Johnson v. Indep. Sch. Dist No. 3*, No. CIV-17-1058-M, 2018 WL 1732070, at *1, 5 (W.D. Okla. Apr. 10, 2018) (ord. not selected for publication) (denying motion to dismiss).
- "Numerous" complaints to the school principal over a two-year period about an inappropriate relationship between a teacher and a minor student, observations of the minor student with the teacher in his car and at school events, and four confrontations between the principal and the teacher in which the principal noted the "need to end [the] conduct …." *B.A.L. ex rel. Stephenson v. Laramie Cnty. Sch. Dist. No. 1*, No. 2:16-cv-00091, 2016 WL 10570871, at *3 (D. Wyo. Nov. 30, 2016) (ord. not selected for publication) (denying motion to dismiss in part).

The information the District Defendants had about Ms. Altice's serious risk for engaging in romantic relationships with students was far below the threshold to put the "appropriate persons" on actual notice of the risk of the sexual conduct occurring between Ms. Altice and Plaintiffs.[81]

---

[81] It is Plaintiffs' burden to identify the "appropriate persons" for Title IX. The broadest definition of "appropriate persons" in this case would include only the Davis High Assistant Principals and Davis High Principal Dee Burton. *See Murrell*, 186 F.3d at 1247.

Before October 2013, the Davis High administration had no actual notice about the sexual relationships with minors maintained by Ms. Altice. No sexual contact or sexual intercourse occurred at the school or on school grounds.[82]   Plaintiffs and Ms. Altice took multiple steps to conceal their relationships, including the utilization of special cell phone apps to disguise communications.[83]  Plaintiff Tamayo continued to conceal his relationship, even after Ms. Altice was arrested.[84]   Plaintiff Guild-Wolff concealed his relationship from school administrators until Ms. Altice was arrested.[85]   The administrators had received no reports of sexually inappropriate behavior by Ms. Altice.[86]

In August 2013, the administration was provided pictures of Ms. Altice and Adrian Tamayo meeting, talking on a blanket over food, and departing a public park. No intimate or sexual contact was displayed.[87]  Nothing else would raise the specter of any untoward relationships.   And Ms. Altice provided a reasonable, innocent explanation for the encounter: Adrian had requested to talk to her about a family issue.   The information was "of a different type than the ultimate misconduct."  *Morris*, 397 F. App'x at 450–51. As a matter of law, the District did not have actual notice of a serious risk of the harassment or discrimination.

Finally, in mid-October, another student, Maleya Shaw, reported that Ms. Altice was

---

[82] Tamayo RFA 5, 6, 10, 11; Guild-Wolff RFA 5, 6, 10, 11; Altice Decl. ¶¶ 16, 35, 38–40; Tamayo Dep. 75:20–76:5.
[83] Altice Decl. ¶ 33.
[84] Tamayo Dep. 76: 6–9.
[85] Guild-Wolff Dep. 86:22–87:11.
[86] South Weber Park Photos, Ex. 22; Burton Decl. ¶ 7, 18–19; Evans Decl. ¶ 6; Loyola Dep. 24:1–24.
[87] Burton Decl ¶ 10; Firmage Decl. ¶ 11.

having a sexual relationship with Joey Guild-Wolff.[88]  Though she asserted that she had text messages to support the claim, she refused to provide the text messages and refused to provide a statement.[89]  Cassadi Loyola, her friend, who was supposed to corroborate the story, refuted it.[90]  Ms. Shaw left for a week's vacation.[91]  And by the time the school district had the opportunity to investigate further, other information about a different incident had already come to light through criminal authorities, and Ms. Altice was arrested shortly thereafter.[92]   The unsupported, contradicted, statement of the student in mid-October did not provide the District with actual knowledge.

By the time the district received actual notice of the sexual conduct, Ms. Altice was hours from being arrested.[93]   Plaintiff Guild-Wolff's sexual contact with Ms. Altice had long been completed.[94]   And Plaintiff Tamayo continued to conceal his relationship, and, in fact, continued it outside of school grounds.[95]

No "appropriate persons" had knowledge of the risk of harassment until Ms. Altice was arrested.   Accordingly, Plaintiffs cannot meet their burden on the first element of the Title IX claim, and Defendants are entitled to summary judgment.

### 2.  The District Was Not Deliberately Indifferent to Any Risks to Which It Was Aware.

The second element of the *Murrell* test subjects the District to liability only if it was

---

[88]  Burton Statement, State Def Initial Disc 000127.
[89]  Firmage Decl. ¶¶ 18–21; Nielson Decl. ¶ 7-8; Loyola Dep. 36:21–38:2.
[90]  *Id*.
[91]  Firmage Decl. ¶22.
[92]  Burton Decl. ¶¶26–28; Burton Statement, State Def Initial Discl. 000127.
[93]  Burton Decl. ¶ 29; Burton Statement, State Def Initial Discl. 000127.
[94]  Altice Decl. ¶¶ 20-22, Guild-Wolff Dep. 63:9–64:2, 180:3-17.
[95]  Tamayo Dep. 73:5–17, 86:9–12, 98:6–24; Tamayo RFA 18, 19.

deliberately indifferent to any risks to which it was aware. This step in the analysis applies only to the District's response to information that was sufficient to constitute actual knowledge; under Title IX, the District is not liable for its response to complaints that failed to meet this threshold. *Rost*, 511 F.3d at 1121.

But to the extent the Court believed that the District did have actual knowledge of the risk of harassment, the District is still entitled to judgment as a matter of law because it was not deliberately indifferent to any known risk.

To satisfy this element, Plaintiffs must show that administrators knowingly failed to take appropriate steps to end harassment, and, as a result, the student was subject to abuse. Whether or not a school district responds with deliberate indifference is a matter of law. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999).

Deliberate indifference is not negligence. Thus, it cannot be established merely by pointing out that a school district failed to adhere to a standard of care such as its own sexual harassment policy or regulations or guidelines established by federal agencies. *See Rost*, 511 F.3d at 1122; *Gebster*, 524 U.S. 291–92.   Rather, it is found when a district, in light of the facts known, responds in a way that is clearly unreasonable. *Morris*, 397 F. App'x 445, 453 (10th Cir. 2010).   The "clearly unreasonable" standard requires a showing of more culpability than a "mere reasonableness standard." *Davis,* 526 U.S. at 649.

In *Rost,* a mentally handicapped adolescent was coerced into performing sexual acts on a number of her male peers. *Rost*, 511 F.3d at 1117. After the victim told a school employee about the harassment, the employee told the school resource officer. *Id.* at 1117–18. Because there were factual and legal questions regarding whether the acts were consensual, whether they

occurred on school grounds, and because criminal sanctions were a possibility, the principal

decided that the police officer should investigate the allegations. *Id.* at 1121–22. The Tenth

Circuit concluded that the school's response was not unreasonable—even though none of the

boys were suspended—where it immediately informed law enforcement and fully cooperated in

the investigation. *Id.* at 1123.

Similarly, the District's actions in this case were not "clearly unreasonable." In each

instance where an issue was raised, the District involved the school's resource officer.[96] To the

extent the Court considers the pictures sufficient to put the district on notice of a risk of

harassment, the District's response—to interview Ms. Altice and reprimand her for

inappropriate, out-of-school conduct with a student— was "timely and reasonable" based on the

information they were provided.  *Escue*, 450 F.3d at 1155. At all times school officials involved

the School Resource Officer. *Cf. Rost*, 511 F.3d at 1121–22.   When the administrators received

unsupported allegations of sexual relationships, the administration interviewed witnesses.

When witnesses contradicted each other and could not provide any proof of the allegations, they

required more to trigger what could be career-ending sanctions.[97] They continued their

investigation when the principal accuser returned to school, and by that time the police had taken

over the investigation, and they took immediate action to suspend Ms. Altice.[98]

Perhaps the District administrators could have been quicker to investigate the

unsupported allegation of a relationship between Ms. Altice and students. But their actions were

---

[96] Burton Decl. ¶¶ 11-12; Evans Decl. ¶ 9; Firmage Decl. ¶ 17; Burton Statement, State Def Initial Disc 000127.
[97] Firmage Decl. ¶23; Nielson Decl ¶10.
[98] Burton Decl. ¶¶ 26–28; Burton Statement, State Def Initial Discl. 000127.

not "clearly unreasonable" as a matter of law.   Plaintiffs' Title IX claims fail on this element.

### 3. The Plaintiffs Must Prove They Endured "Severe, Pervasive, and Offensive" Sexual Harassment Caused by the District, Over Which the District Had Control.

To pursue their Title IX claim, Plaintiffs must also prove that they endured "severe, pervasive, and offensive" sexual harassment." The District Defendants will assume, for the purpose of this motion only, that illegal sexual contact between a student and teacher can satisfy this element, regardless of whether there was factual consent to the sexual conduct.[99]

However, Plaintiffs must also demonstrate that the School District's deliberate indifference actually "subjects its students to harassment.   That is, the deliberate indifference must, at a minimum, *cause* student to undergo harassment or make them liable or vulnerable to it."   *Davis*, 526 U.S. at 645 (1999)(emphasis added); *see also Rost*, 511 F.3d at 123-24.   While there is a split of authority regarding whether the victim must undergo further harassment after the notice-causing event, *see Rost*, 511 F.3d at 1123, any actions by the District in this case did not "cause" either Plaintiff "to undergo harassment or make them liable or vulnerable to it." *Id.* at 1124.

Plaintiff Guild-Wolff had one incident of sexual contact with Ms. Altice, not occurring at the school or on school grounds, and occurring even before the "pictures in the park" were

---

[99] *Cf.*   Tamayo RFA 4, 9 (admitting that Plaintiff Tamayo initiated sexual intercourse and conduct between him and Ms. Altice); *id.* RFA 12, 13 (admitting that all sexual intercourse and contact was welcomed by Plaintiff Tamayo; *see also* Guild-Wolff RFA 4, 9 (admitting that Plaintiff Guild-Wolff initiated sexual intercourse and conduct between him and Ms. Altice); *id.* RFA 12, 13 (admitting that all sexual intercourse and contact was welcomed by Plaintiff Guild-Wolff).

delivered to the school.[100]  Plaintiff Tamayo hid is relationship with Ms. Altice, even after she

was arrested.   He continued the relationship with her after she was released on parole, and he

was even charged with witness tampering based on his actions to interfere with testimony against

her.[101]  These contacts did not occur because of the District's deliberate indifference or "under

the operations of [the] funding recipient, in a context subject to the school district's control."

*Davis,* 526 U.S. at 644; *see Escue,* 450 F.3d at 1155 (concluding that plaintiff's Title IX failed

because she failed to demonstrated that the school's actions "led to further sexual harassment");

*see also Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 365 (6th Cir. 2012) (holding that

schools cannot be liable under Title IX for harassment that did not occur at the Plaintiff's

school).

      Neither Plaintiff has shown that an appropriate person employed by the District had

knowledge of a risk of the type of harassment alleged by Plaintiffs, nor that the District was

deliberately indifferent to the harassment, nor that the administrators' actions caused them to be

subjected to severe, pervasive, and unreasonable harassment.   The District is entitled to

summary judgment on Plaintiffs' Title IX claims.

## II.    Defendants Did Not Violate Plaintiffs' Civil Rights Under 42 U.S.C. § 1983

      Both Plaintiffs assert causes of action for violations of the Equal Protection and Due

Process Clauses of the Fourteenth Amendment to U.S. Constitution, actionable pursuant to 42

U.S.C. § 1983.[102]   None of these claims survives summary judgment.

###    A.  *The District Is Not Liable for Sexual Harassment Under the 14th Amendment Equal Protection Clause.*

---

[100]  Altice Decl. ¶ 20–22; Guild-Wolff Decl 63:9–64:2, 180:3–17.
[101]  Tamayo Dep. 73:5–17; 86:9–12, 98:6–24; Tamayo RFA 18, 19.
[102]  Tamayo Compl. (doc. 2, case '157); Guild-Wolff Compl. (doc. 6, case '162).

Sexual harassment by a state actor may constitute a violation of the equal protection clause. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999). However, it is well established that an institutional defendant may not be sued under §1983 for an injury inflicted by its employees or agents unless the injury occurred in the execution of a government policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In other words, Plaintiffs must show that the alleged violation of their federal rights was caused by an official custom or policy of the Davis School District. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) They cannot do so.

In order to establish School District liability for sexual harassment under the Equal Protection Clause, "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249.   For a school district to be subject to liability, the policy may be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the District's officers. *Id.* "Absent such an official policy, a municipality may also be held liable if the discriminatory practice is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168 (1970)).

Plaintiffs have alleged that the District acted pursuant to customs and policies to deprive plaintiffs of rights and privileges secured by the Fourteenth Amendment.[103]  However, Plaintiffs have failed to provide the official or unofficial School District policies or customs that *caused*

---

[103]  Compl. (doc. 2, case '157) at ¶ 95; Compl. (doc. 6, case '162) at ¶ 81.

the deprivation of Plaintiffs' Fourteenth Amendment rights, and no such policy exists. The facts show that the School District does not have a custom of sexual harassment, but in fact the opposite is true. The School District immediately reported Ms. Altice's conduct to the Kaysville police department as soon as they were informed that an inappropriate relationship may have taken place.[104]

If Plaintiffs rely on the idea that there was a "custom of acquiescing to student sexual harassment," then Plaintiffs must plead and prove that there is a "continuing, widespread, and persistent patter of misconduct by the [district], (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct, and (3) a resulting injury to the plaintiff" *Rost*, 511 F.3d 1125.   Plaintiffs have no evidence of any such a pattern, and for the reasons described above, have no evidence of deliberate indifference. *Id.* (noting that "generalized allegations of failure to follow policies are insufficient to create a material fact on summary judgment). Therefore, the District is not liable for sexual harassment perpetrated by a teacher under the Equal Protection Clause of the Fourteenth Amendment.

### B. *Individual Defendants Are Not Liable for Sexual Harassment Under the Equal Protection Clause.*

An official or supervisory employee may only be held liable for an employee's sexual harassment under § 1983 if the plaintiff can show the supervisor's "*deliberate* indifference to *known* sexual harassment." *Murrell*, 186 F.3d at 1250 (emphasis added).   This conduct may constitute state action if a supervisor or employer participates in or consciously acquiesces in sexual harassment by a third party or co-worker. *Id.* Simply being a supervisor is not enough.

---

[104]  Burton Statement, State Def. Initial Discl. at 000127.

And a supervisor's negligence is also insufficient for liability. *Id.* Instead, Plaintiffs must allege

facts sufficient to show that the defendants "actually knew of and acquiesced in" Ms. Altice's

behavior. *Id.* "Actual knowledge" in this circumstance means that "the plaintiffs must prove the

defendants received notice of a pattern of violations of … students' constitutional rights to be

free of sexual abuse at the hands of the school district's employees." *Jojola v. Chavez*, 55 F.3d

488, 490 (10th Cir. 1995) (citations and quotations omitted). Plaintiffs cannot do so.

      The Individual District Defendants were not deliberately indifferent to any sexual

harassment.   Despite Plaintiffs' unsupported allegations that the School Officials had knowledge

of rumors, jokes, and complaints about Ms. Altice,[105]  Plaintiffs can provide no evidence that the

school officials had any knowledge of the sexual relationships between Ms. Altice and the

Plaintiffs. In fact, the evidence shows that the Individual District Defendants had no knowledge

of any such rumors,[106] and that both of the Plaintiffs and Ms. Altice intentionally hid their

relationships and because nothing was reported to school officials.[107]

      But even if Plaintiffs could present evidence showing that the Individual District

Defendants had knowledge of the rumors or jokes, that knowledge is insufficient to trigger §

1983 equal protection liability. *Jojola v. Chavez*, 55 F.3d 488, 491 (10th Cir. 1995) (concluding

that allegations of "four incidents and other rumors" about relationships over a 19-year tenure

did not demonstrate the "requisite pattern of behavior necessary to support imposing [§ 1983]

liability").   The only other facts which Plaintiffs could raise are those addressed in support of

their Title IX complaint.   And for the same reasons as described above, none of the school

---

[105]  Compl. (doc 2, case '157) at ¶ 96; Compl. (doc. 6, case '162) at ¶¶ 43–52.
[106]  *E.g.* Firmage Decl. ¶ 10; Evans Decl. ¶ 15.
[107]  Altice Decl. ¶¶ 18–19; 33; Tamayo Dep. 73:5–17.

administrators was deliberately indifferent to any harassment.

The Individual Defendants had no knowledge of any relationships between Ms. Altice and any minor student until immediately before Ms. Altice was arrested. Plaintiffs intentionally hid their relationships with Ms. Altice and did not disclose to any school administration until after Ms. Altice had already been arrested, school officials did not have any actual knowledge of an inappropriate relationship and could not have been deliberately indifferent to it. Therefore, the school officials have not violated the Equal Protection Clause.

**C.   *School District and District Defendants Are Not Liable for a Fourteenth Amendment Due Process Violations.***

Likewise, the Due Process Clause of the Fourteenth Amendment provides no claim for Plaintiffs.   It appears that Plaintiffs' due process theories seek to hold the School District Defendants liable for the actions of Ms. Altice.   "In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *DeShaney v. Winnebago County of Dep't of Social Services,* 489 U.S. 189, 197 (1989)). There are two recognized exceptions: "(1) the special relationship doctrine; and (2) the "danger creation" theory." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). Neither applies in this case.

**1.   "Special Relationship" Exception Does Not Apply Because the School District Did Not Restrain Plaintiffs' Freedom or Exercise Control over Plaintiffs.**

"A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (internal citations omitted).   A state actor can thus be liable for damages caused by a

third party when a "state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty" during the period of restraint.

*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003) (citations omitted) "Absent involuntary restraint, however, no duty to protect arises under the special-relationship theory" and the duty to protect arises not from "knowledge of the individual's predicament" but the limitation imposing freedom to act on his own behalf. *Id.*

Applied in the context of a school district having a duty to protect a student from the acts of third parties, the Tenth Circuit court explained that "[c]ompulsory attendance laws for public schools …, do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998). Plaintiffs were not otherwise involuntarily restrained and therefore they have no due process claim against the School District Defendants based on the special relationship doctrine.   *Id.*; *see also Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1068 (D.N.M. 2010) (dismissing a special relationship claim in a student-on-student school harassment scenario).

### 2. The "Danger Creation" Exception Does Not Apply Because They Did Not Affirmatively Act to Create a Danger, Did Not Act with Recklessness, and No Conscience Shocking Behavior Occurred.

The "danger creation" theory allows governmental liability "for an individual's safety if it created the danger that harmed the individual." *Rost*, 511 F.3d at 1126 (citations and quotations omitted). "A danger creation claim must meet a six-part test: (1) [the state defendants] created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants['] conduct put the plaintiff at substantial

risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience." *Id.* Plaintiffs have no evidence on any of the six elements.   They have no evidence to show any affirmative act to create a danger.   As described above, they cannot show that any risk was "obvious and known."   They cannot show recklessness—at most they can show that their actions may have been negligent.  *Rost*, 511 F.3d at 1126 (concluding that a school district's alleged failure to follow harassment policies "sounds in negligence").   And they cannot show any conscience-shocking behavior.

This element requires a plaintiff to show that the government actor engaged in conduct with "a degree of outrageousness and a magnitude of potential harm or actual harm that is truly conscience shocking. … *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 958 (10th Cir. 2001) (citations and quotations omitted). Conscience-shocking behavior is not negligence, rather it is most likely to be found "at the other end of the culpability spectrum–that is, where there is an intent to do harm that is not justified by any government interest ... ." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998).   Thus, "conscience-shocking" conduct does not include:   (1) Repeatedly calling a twelve year old girl a prostitute, *Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253 (10th Cir. 1996);   (2) shoving a student into a locker, *Id.* at 1290;   (3) failing to protect a prison guard from dangerous inmates during an escape, *Martinez v. Uphoff*, 265 F. 3d 1130, 1133 (10th Cir. 2001); (4) improperly licensing a day care that abused its clients, *Ruiz*, 299 F.3d 1173, 1183–84 (10th Cir. 2002); (5) requiring a disabled student who expressed a desire to leave a class to continue attendance without investigating the basis of that desire, *Rost*, 511 F.3d at 1126; (6) abandoning observation of a patient who was being withheld seizure

medication.  *Gray*, 672 F.3d at 929; or, (7) a teacher slapping a student.  *Lillard v. Shelby County Bd. Of Educ.* 76 F.3d 716, 725-26 (6th Cir. 1996).   At most, Plaintiffs can show that administrators were not spying on their staff or taking extreme discipline measures based on relatively innocent conduct and unfounded allegations.

The District Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims.[108]

## III.   The District Defendants Are Entitled to Summary Judgment on Plaintiffs' Common-Law Claims.

The remaining counts in each Plaintiff's Complaint are rooted in state common law: Tamayo's First, Second, Third, Fourth, and Fifth Causes of Action[109] and Guild-Wolff's Fourth and Fifth Causes of Action.[110]   The District Defendants are entitled to summary judgment on each of the claims because the claims are barred by various provisions of the Governmental Immunity Act of Utah.

First, the claims should be dismissed because Plaintiffs failed to file an undertaking as required by the Act.   Second, Plaintiffs have named individuals and entities which are immune under the Act. Only the school district may be sued because claims against the state entity are the "exclusive remedy" for common law claims, and neither plaintiff has demonstrated that any Individual District Defendant engaged in "willful misconduct" to subject them to individual

---

[108]  The Individual District Defendants would also be entitled to qualified immunity on any § 1983 claims, and none of the rights articulated by Plaintiffs has been clearly established. *See Rost*, 511 F.3d at 1126 (affirming dismissal of due process claims); *cf. Jojola*, 55 F.3d at 491 (finding similar allegations insufficient to state equal protection claim); *Murrell*, 186 F.3d at 1250–51 (reversing dismissal of equal protection claim on a motion to dismiss where plaintiff alleged that administrators had actual knowledge of student-on-student assault and repeatedly failed to take any action to protect the plaintiff from the assailant).

[109]  Compl. (doc 2, case '157) at 11–13.

[110]  Compl. (doc. 6, case '162) at 14–15.

liability.   And finally, the claims against the school district must be dismissed because they remain immune for all tort claims arising out of a battery, and the Utah Court of Appeals has specifically held—in a case involving the same schoolteacher but a different male student victim—that these claims arise out of a battery.

The Governmental Immunity Act of Utah, Utah Code Title 63G, Chapter 7, "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority."   Utah Code Ann. § 63G-7-101 (2013).[111]   The Immunity Act provides immunity "from suit for any injury that results from the exercise of a governmental function."   *Id.* § 63G-7-201(1).   It applies to any acts that "occur[] during the performance of an employee's duties, with the scope of employment, or under color of authority…."   Utah Code § 63G-7-202(3)(a).

There can be no question that the Immunity Act applies in this case, and that it applies to claims against all Defendants.   The School District is part of the State for purposes of the Act, and the School District Defendants were acting as its employees for the purposes of Plaintiffs'. Utah Code §§ 63G-7-102(2)(a), -102(9); *accord Shunk v. State*, 924 P.2d 879, 880 (Utah 1996) (applying the predecessor statute to a school district). The operation and control of the school is undoubtedly a governmental function.   Utah Code § 63G-7-104(4); *see DeBry v. Noble*, 889 P.2d 428, 434 (Utah 1995) (recognizing that, when the legislature enacted the definition of "governmental function" in a previous version of the Immunity Act, it "vastly expanded the scope of the term … and therefore the scope of governmental immunity by making all

---

[111]  Because Plaintiffs' claims arose in 2013, the 2013 version of the Governmental Immunity Act applies to their case.   Except as otherwise noted, all citations will be to the 2013 version of the Act.

government acts subject to immunity…").   And the acts that Plaintiffs complain about—hiring, training and supervising teachers, investigating misconduct, ensuring a safe school for students—are undoubtedly within the scope of the District Defendants' employment such that they are "employees" for the purposes of the Immunity Act.   Utah Code § 63G-7-202(3)(a); *Salo v. Tyler*, 2018 UT 7, ¶¶ 35–36, 417 P.3d 581, 589 (noting that a person is an "employee" of a governmental entity if they perform acts "of the general kind the employee is employed to perform," and took actions "motivated, at least in part, by the purpose of serving the employer's interest," in other words performing duties "of the general kind" "assigned by the employer, as opposed to being wholly involved in a personal endeavor."   (further citations and quotations omitted)).   The Immunity Act affords its protection to all Defendants, but in particular the District Defendants.

### A.   *Plaintiffs' State Tort Claims Are Barred Because They Failed to File an Undertaking.*

The Immunity Act bars Plaintiffs' state-law tort claims because Plaintiffs failed to file an undertaking with the Court. Section 601 of the Immunity Act requires that, "at the time" an action governed by the Act "is filed, the plaintiff shall file an undertaking in a sum fixed by the court".   Utah Code § 63G-7-601(2).   Failure to file the undertaking is an affirmative defense which may be raised by the governmental defendants. *Hansen v. Salt Lake Cnty.*, 794 P.2d 838, 840 (Utah 1990).   The undertaking requirement applies in federal, as well as state, court. *Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991).

In general, the dismissal of a lawsuit for failure to file an undertaking is dismissal without prejudice.   *Hansen*, 794 P.2d at 840; *Rippstein*, 929 F.2d at 578.   However, under the 2013

Immunity Act,[112] if more than one year has passed since a plaintiff has filed a notice of claim, dismissal for failure to file an undertaking should be with prejudice, because a newly filed complaint would be time-barred, and Utah's general savings statute would not apply to the new complaint. *Craig v. Provo City*, 2016 UT 40, ¶¶ 1, 2, 6, 18, 41, 389 P.3d 423, 423–24, 426, 432; *See, Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice because claims were "clearly barred by the statute of limitations or claim preclusion").

In this case, neither Plaintiff filed an undertaking contemporaneously with filing their complaint.[113] And much more than a year has elapsed since the case was filed (and after the notices of claims were submitted to the State).[114] Accordingly, the Immunity Act bars Plaintiffs' state law tort claims, and they should all be dismissed with prejudice.

### B. Claims Against the Individual District Defendants Are Barred.

Even if the undertaking requirement did not apply, the Immunity Act categorically bars the claims against the Individual District Defendants. A claim for injuries arising during the performance of an employee's duties must usually be brought against the State (or in this case, a State entity) only—it is the "plaintiff's exclusive remedy." Utah Code § 63G-7-202(3)(a). "By making suing under the [Immunity Act] a plaintiff's sole remedy against a government employee, the legislature intended to extend to government employees the blanket immunity

---

[112] The Utah Legislature amended the Act in 2017 to include a savings statute for claims dismissed for failure to file an undertaking. *See* 2017 Utah Laws Ch. 300 (H.B. 399), § 4(3) (codified at Utah Code § 63G-7-403(3). However, that provision is not applicable to this case, as the 2013 version of the Act applies, and the amendments are not retroactive. Utah Code § 68-3-3 ("A provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive.").

[113] *See generally* Docket Sheet, Case '157, Docket Sheet, Case '162.

[114] Tamayo Notice of Claim, App'x Ex. 16, at 1; Guild-Wolff Notice of Claim, App'x Ex. 15, at 1.

from suit that was explicitly granted to government entities." *Mecham v. Frazier*, 2008 UT 60,

¶ 14, 193 P.3d 630, 633.   Thus, the Individual District Defendants enjoy "blanket immunity"

from all state law claims.

There are five exceptions to the blanket immunity for individuals given by the Immunity

Act, only one of which could arguably apply here: An employee may still be liable if "the

employee acted or failed to act through fraud or willful misconduct."   Utah Code § 63G-7-

202(3)(c)(i).   "'Willful misconduct' means the intentional doing of a wrongful act, or the

wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's

conduct will probably result in injury."   Utah Code § 63G-7-102(10).   A plaintiff must meet his

burden—including on summary judgment—to demonstrate evidence showing both "(1) that the

government actor intentionally performed a wrongful act [and] (2) … an awareness that injury

will likely result."   *Salo*, 2017 UT 7, at ¶ 41, 417 P.3d at 590.

In this case, Plaintiffs have no evidence that any of the Individual District Defendants

acted with willful misconduct.   And, as described above, all the evidence is to the contrary.

None of the Individual District Defendants had any knowledge—before Ms. Altice started at

Davis High—that Ms. Altice was a danger to the students. None of the Individual District

Defendants had any actual knowledge of any relationship between Ms. Altice and the Plaintiffs

(or any other minor student). When they were presented with information that Ms. Altice had

one less-than-appropriate (but not illegal) encounter with a minor student—in public, off school

grounds, during the summer—they investigated, listened to Ms. Altice's description of the

events, and provided a reprimand that seemed appropriate and proper considering what they

knew at the time.   And when they were presented with information that Ms. Altice was having

an illegal, sexual relationship with a student, they called the authorities, investigated the best they could, and, when proof of the relationship was discovered, suspended Ms. Altice.

Even if some of the Individual District Defendants could have been more zealous in investigating, or training, or reprimanding Ms. Altice, those potential mistakes cannot be "willful misconduct" as defined by the Immunity Act.   All of the state tort claims against the Individual District Defendants must be dismissed.

### C.  Tort Claims Against the District Are Barred.

Under the Immunity Act, the State (and the District) waives its sovereign immunity in certain circumstances, including when a plaintiff alleges that a state employee acted negligently. Utah Code § 63G-7-301(4).   However, the state *retains* immunity if the "injury arises out of, in connection with, or results from" among other things: "assault, battery, … deceit… infliction of mental anguish, or violation of civil rights; …."Utah Code § 63G-7-301(5)(b).   If a plaintiff's injury was proximately caused by the immune conduct, then the claim is barred. *See Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 44, 353 P.3d 140, 151 (establishing the "proximate cause" standard for analyzing exceptions to a waiver of negligence for claims arising in the relevant time period).   For the action to be a proximate cause of the harm, the action must "in natural and continuous sequence … produce[] the injury and without which the result would not have occurred." *Mitchell v. Pearson Enters.*, 697 P.2d 240, 246–47 (Utah 1985). However, the immune conduct need not be the "sole cause" of the plaintiff's injuries. *Larsen v. Davis Cnty. Sch. Dist.*, 2017 UT App 221, ¶ 24, 409 P.3d 114, 120.   If "an immunity-invoking condition (e.g., assault or battery) is at least a 'proximate cause' of the claimed injury … the District is immune from suit." *Id.* at ¶ 24, 409 P.3d at 122; *see also Taylor ex. rel Taylor v. Odgen City*

*Sch. Dist.* 959 P.2d 159 (Utah 1996) (applying the pre-*Barneck* test in a similar school case).

In a case just about as on-point as could be imagined, the Utah Court of Appeals has held that the District is immune from Plaintiffs' negligence claims.   In *Larsen v. Davis County School District*, another male student-victim of sexual contact with the *same teacher* (Ms. Altice) sued the *same school district* (Davis County) for essentially the *same torts* (negligent hiring, screening, training, supervision, and retention; negligent infliction of emotional distress, vicarious liability).   *Id.* at ¶¶ 3–5, 409 P.3d at 116. Invoking the assault and battery exception to the Immunity Act, the district moved to dismiss the claims, and the trial court granted the motion.   *Id.* at ¶ 1, 409 P.3d at 116.   The Court of Appeals affirmed.

After concluding that a procedure apportioning fault between the allegedly negligent and intentionally tortious government actors would not change the analysis, *id.* at ¶¶ 19–27, 409 P.3d 119–21, the Court of Appeals determined that, as a matter of law, the assault and battery exception applied to restore the District's immunity.   "Teacher's inappropriate sexual conduct with [plaintiff] is inextricably intertwined with each cause of action … [and] is more than just a 'but for' causal link.   Rather Teacher's contact is a proximate cause of Larsen's injury …."   *Id.* at ¶ 29, 409 P.3d at 122.

The court then rejected two of the plaintiff's arguments to avoid the exception.   First, the court disagreed that, because the plaintiff factually consented to the sexual contact, that the immunity exception exempting actions constituting civil battery would not apply. The court concluded that the illegal sexual conduct alleged constituted contact that "was 'harmful or offensive at law,'" *id.* at ¶ 33, 409 P.3d at 123 (citations omitted) and a minor's consent to an intentional tort is invalid if the minor could not consent under the criminal law.   *Id.* at ¶ 135, 409

P.3d at 123–24.

Second, the court rejected the plaintiff's argument that because he sustained damage separate and apart from the non-physical interactions with the teacher (discussions, text messages, and the like) that damage from that conduct would not be barred by the battery exception.  *Id.* at ¶ 39, 409 P.3d at 124. The court held that the Immunity Act "compel[s] reinstatement of total immunity when a governmental entity's immune conduct is 'a proximate cause' of a plaintiff's injuries," and "separat[ing] … alleged harm into two separate categories" does not escape the conclusion that the battery was still "a proximate cause" of some of the injuries.  *Id.* at ¶ 40, 409 P.3d at 124–25.

*Larsen* is on all fours with this case. All of Plaintiffs' claims injuries were proximately caused by Ms. Altice's sexual contact with the Plaintiffs, however categorized, and whether or not each plaintiff consented to the contact. Plaintiffs' injuries resulted from the "natural and continuous sequence" of the inmate and sexual relationships Plaintiffs had with Ms. Altice. Therefore, the School District retains immunity, and the claims against it should be dismissed.

## CONCLUSION

For the reasons stated, the District Defendants request that the Court grant their motion and dismiss all claims brought by both Plaintiffs with prejudice.

DATED:   August 27, 2018

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Kyle J. Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
*Counsel for District Defendants*

40