KYLE J. KAISER (13924)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Email: kkaiser@agutah.gov

*Attorneys for Davis County School District, Davis High School, Bryan Bowles, Craig Poll, Dee Burton, Richard Firmage, Kathy Evans, and Scott Nielson*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH GUILDWOLFF,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS COUNTY SCHOOL DISTRICT, BOARD OF EDUCATON OF THE DAVIS SCHOOL DISTRICT, BRIANNE LAND ALTICE, BRYAN BOWLES, DEE BURTON, RICHARD FIRMAGE, KATHY EVANS, SCOTT NIELSEN, and DOES 1-10.<br><br>Defendants.<br><br>And<br><br>ADRIAN PEREZ-TAMAYO, GINA MUSCOLINO, and JOSE PEREZ-TAMAYO,<br><br>Plaintiffs,<br><br>v.<br><br>DAVIS COUNTY SCHOOL DISTRICT, DAVIS HIGH SCHOOL, BRIANNE LAND ALTICE, BRYAN BOWLES, CRAIG POLL, PAMELA PARK, CRAIG CARTER, DEE BURTON, RICHARD FIRMAGE, RYAN BISHOP, CATHY EVANS, DAVE [SCOTT] NIELSON, and DOES 1-10.<br><br>Defendants. | **DISTRICT DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:15-cv-0162<br>Case No. 1:15-cv-0157 (consolidated)<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

REPLY FACTS ............................................................................................................... 1

REPLY ARGUMENT ...................................................................................................... 2

  I.    The Defendants Did Not Violate Title IX. ............................................................ 2

      A.    "Appropriate Persons" in the District Did Not Have "Actual Knowledge" of Any Harassment of Plaintiffs. ....................................................................... 2

          1.    The Allegations from Sunset Junior High Do Not Put the District Defendants on Actual Knowledge of Harassment. ........................... 3

          2.    The Allegations from Davis High Do Not Put the District Defendants on Actual Notice of Harassment. ...................................... 6

      B.    The District Was Not Deliberately Indifferent to Any Risks to Which It Was Aware. 8

      C.    The Plaintiffs Must Prove They Endured "Severe, Pervasive, and Offensive" Sexual Harassment Caused by the District, Over Which the District Had Control. ................ 9

  III.    Defendants Did Not Violate Plaintiffs' Civil Rights Under 42 U.S.C. § 1983 ............. 10

      A.    Defendants Are Not Liable for Sexual Harassment Under the 14th Amendment Equal Protection Clause. ............................................................................. 10

          1.    District is Not Liable Under a Hostile Educational Environment Theory. ............. 10

          2.    Individual Defendants Cannot Be Held Liable Under Equal Protection Clause Because They Had No Knowledge of Harassment. ......................... 11

      B.    Defendants Are Not Liable for Under the 14th Amendment Due Process Clause. ..... 14

          1.    A Special Relationship Did Not Exist Between Teacher and Student. .................. 14

          2.    The "Danger Creation" Exception Does Not Apply. ............................... 15

  IV.    The District Defendants Are Entitled to Summary Judgment on Plaintiffs' Common-Law Claims. ............................................................................................... 15

      A.    Plaintiffs' State Tort Claims Are Barred Because They Failed to File an Undertaking. ............................................................................................... 16

      B.    Claims Against the Individual School District Defendants Are Barred. ................. 16

      C.    Tort Claims Against the District Are Barred. ......................................... 17

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*,
  159 F.3d 1253 (10th Cir. 1998) ............................................................................. 15

*Clegg v. Wasatch Cnty.*,
  2010 UT 5, ¶ 12 n.2, 227 P. 3d 1243, 1247. .................................................... 16

*Craig v. Provo City*,
  2016 UT 40, 389 P.3d 423 ..................................................................................... 16

*DeShaney v. Winnebago*,
  489 U.S. 189 (1989) ............................................................................................... 14

*Doe v. Hutchinson*,
  728 F. App'x 829 (10th Cir. 2018) ....................................................................... 10

*Doe v. School Bd. of Broward Cnty., Fla.*,
  604 F.3d 1248 (11th Cir. 2010) ................................................................ 6, 8, 12, 13

*Doe v. St. Francis Sch. Dist.*,
  694 F.3d 869 (7th Cir. 2012) .................................................................................... 8

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................................. 18

*Escue v. N. Okla. College*,
  450 F.3d 1146 (10th Cir. 2006) ...................................................................... Passim

*Ferencich v. Merritt*,
  79 F. App'x 408 (10th Cir. 2003) ......................................................................... 13

*Gates v. Unified Sch. Dist. No. 449*,
  996 F.2d 1035 (10th Cir. 1992) ............................................................................ 13

*Gebster v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) .......................................................................................... 4, 6, 7

*Hansen v. Salt Lake Cnty.*,
  794 P.2d 838 (Utah 1990) ..................................................................................... 16

*Hicks v. Gates Rubber Co.*,
  833 F.2d 1406 (10h Cir. 1987) ............................................................................. 11

*Hyland v. Dixie St. Univ.*,
  2017 WL 2123839 (D. Utah May 16, 2017) ........................................................ 16

*J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*,
  397 F. Appx. 445 (10th Cir. 2010) .................................................................... 7, 11

*Johnson v. Martin*,
  195 F.3d 1208 (10th Cir. 1999) ............................................................................ 12

*Johnson v. Riddle*,
  305 F.3d 1107 (10th Cir. 2002) ............................................................................ 18

*Jojola v. Chavez*,
  55 F.3d 488 (10th Cir. 1995) ................................................................................ 13

iii

*Larsen v. Davis Cnty. Sch. Dist.*,
  2017 UT App 221, 409 P.3d 114 ........................................................ 18
*Maldonado v. Josey*,
  975 F.2d 727 (10th Cir. 1992) ........................................................... 15
*Monell v. N.Y. City Dep't of Soc. Servs.*,
  436 U.S. 658 ...................................................................................... 10
*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ............................................................................. 2
*Murrell v. School Dist. No. 1, Denver, Colo.*,
  186 F.3d 1238 (10th Cir. 1999) ........................................... 2, 5, 10, 12
*Noland v. McAdoo*,
  39 F.3d 269 (10th Cir. 1994) ............................................................. 12
*Norton v. Canandaigua City Sch. Dist.*,
  208 A.D.2d 282 (N.Y. App. Div. 1995) ............................................. 14
*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) ............................................................................. 11
*Rost ex Rel K.C v. Steamboat Springs RE-2 Sch. Dist.*,
  511 F.3d, 1114 (10th Cir. 2008) ..................................................... 9, 15
*Ross v. Univ. of Tulsa*,
  180 F. Supp. 3d 951 (N.D. Okla. 2016) .......................................... 4, 5, 8
*Ruiz v. McDonnell*,
  299 F.3d 1173 (10th Cir. 2002) ......................................................... 15
*Salo v. Tyler*,
  2018 UT 7, 41, 417 P.3d 581 ............................................................. 17
*Seamons v. Snow*,
  84 F.3d 1226 (10th Cir. 1996) ........................................................... 15
*Uhlrig v. Harder*,
  64 F.3d 567 (10th Cir. 1995) ............................................................. 15
*Wankier v. Crown Equip. Corp.*,
  353 F.3d 862 (10th Cir. 2003) ........................................................... 18
*West v. Am. Tel. & Tel. Co.*,
  311 U.S. 223 (1940) ........................................................................... 18
*Woodward v. City of Worland*,
  977 F.2d 1392 (10th Cir. 1992) ......................................................... 13
*Young v. Salt Lake City Sch. Dist.*,
  52 P.3d 1230 (Utah 2002) .................................................................. 14

Statutes

42 U.S.C. § 1983 ...................................................................................... ii
DUCivR 56-1(d) ........................................................................................ 1
Utah Code § 63G-7-102(10) ..................................................................... 17
Utah Code § 63G-7-301(5)(b) ................................................................... 17
Utah Code § 63G-7-403(3) ....................................................................... 16

Utah Code § 63G-7-601(2) ........................................................................................... 16
Utah Code § 68-3-3 ..................................................................................................... 16

Other Authorities

H.B. 399 ...................................................................................................................... 16
Is Clothing Probative of Attitude or Intent? Implications for Rape and Sexual Harassment Cases,
   11 Law & Ineq. 391 (1993) ................................................................................... 19, 20
"Slut-shaming," Wikipedia,
   https://en.wikipedia.org/wiki/Slut-shaming .................................................................. 19
 Brian N. Sweeney, "Slut shaming," *The SAGE Encyclopedia of Psychology & Gender*,
   http://sk.sagepub.com/the-sage-encyclopedia-of-psychology-and-gender/i15927.xml ............. 19
 Sarah G. West, M.D., Susan Hatter, S Friedman, MD & James L. KNowll IV, MD, "Lessons to
 Learn, Female Educators Who Sexually Abuse Their Students: Page 2 of 2," *Psychiatric Times*,
   http://www.psychiatrictimes.com/sexual-disorders/lessons-learn-female-educators-who-
   sexually-abuse-their-students/page/0/1 ...................................................................... 20

## REPLY FACTS[1]

The District Defendants incorporate their Objections to Plaintiffs' Facts Supplied in Their Response to District Defendants' Motion for Summary Judgment. Additionally, pursuant to DUCivR 56-1(d), the District Defendants provide the following facts "to rebut a claim that a material fact is in dispute."

1.       When Ms. Altice was transferred to Davis High, Davis High principal Dee Burton was specifically told by Sunset Junior High administrators that Ms. Altice would not be a problem academically.   Principal Burton was never told about any issues with Ms. Altice's behavior, any allegations (unfounded or otherwise) of any sexual improprieties committed by Ms. Altice while employed at Sunset Junior High, or any specific conduct undertaken by Ms. Altice that would have put me on notice that Ms. Altice might be a risk to engage in sexual contact with any Davis High students.[2]

2.       None of the assistant principals at Davis High had received any of the same information.   And none of the assistant principals at Davis High raised any facts to Principal Burton which would have put me on notice that Ms. Altice might be a risk to engage in sexual conduct with any Davis High students.[3]

3.       During Ms. Altice's tenure at Davis High, Principal Burton was never made aware of any alleged improper sexual or other conduct undertaken by Ms. Altice at Sunset Junior High

---

[1] Defendants provide, for the Court's convenience and without waiving objection to their admissibility on Summary Judgment, exhibits cited by Plaintiffs in their Response, but not provided by either party up to this point.   The Supplementary Appendix will indicate which footnotes in Plaintiffs' Response the exhibits refer to.

[2] Burton Supp. Decl., Supp. App'x Ex. 23, at ¶¶ 2–3.

[3] *Id.* at 4.

until after she was arrested.[4]

## REPLY ARGUMENT[5]

### I.     The Defendants Did Not Violate Title IX.

Despite Plaintiffs' arguments to the contrary, Plaintiffs have not met their burden to show

genuine issues of material fact such that their Title IX claims should proceed to trial. Plaintiffs

do not seem to dispute that the Individual Defendants may not be liable for Title IX violations,

and the Title IX claim against the District also fails.   To be liable, an "appropriate person" in the

district has to have had "actual knowledge" of "acts of harassment" such that the district could be

viewed as making a "conscious decision to permit sex discrimination in its programs."   *Murrell*

*v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).   Plaintiffs must also

show that any deliberate indifference must have caused the student to "undergo harassment or

make the liable or vulnerable to harassment."   *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S.

629, 645 (1999) (quotations omitted).   Plaintiffs have not shown actual knowledge of

harassment.   They have not shown deliberate indifference.   They have not shown the

appropriate causation. Therefore, the School District Defendants are entitled to summary

judgment.

### A.  *"Appropriate Persons" in the District Did Not Have "Actual Knowledge" of Any Harassment of Plaintiffs.*

Plaintiffs have not met their burden to show that "appropriate persons" had "actual

knowledge" of the harassment.   Plaintiffs now focus on two, distinct sets of facts, neither of

---

[4] *Id.* at ¶ 4, 6.
[5] Plaintiffs have not responded to the District Defendants' argument that all claims asserted by
Adrian Perez-Tamayo's parents should be dismissed. (District Defs.' Mem. At 14 n.74.)   All of
their claims should be dismissed for the reasons stated in the original memorandum.

which satisfies the standard for Title IX liability.   First, Plaintiffs release a gaggle of facts surrounding Ms. Altice's tenure at Sunset Junior High—a different school within the Davis County School District.   These facts do not help Plaintiffs' claims for two reasons:   They are not of the nature and quality to put administrators on notice of sexual harassment of Plaintiffs, and Plaintiffs have no evidence that the "appropriate persons" had actual knowledge of any of the facts.

Plaintiffs' second flock of facts surrounds what happened at Davis High School.   But, again, many of the rumors, innuendos, and characterizations of others were unknown to the "appropriate persons" or are simply not probative on determining "actual knowledge" of harassment in the school's "programs". The facts lead to a goose-egg on liability.

### 1.   The Allegations from Sunset Junior High Do Not Put the District Defendants on Actual Knowledge of Harassment.

Plaintiffs' four pages of allegations related to Ms. Altice while she was a teacher at Sunset Junior High are insufficient to put the District on notice that "employing [Ms. Altice] puts its students at substantial risk of being harassed …." *Escue v. N. Okla. College*, 450 F.3d 1146, 1153 (10th Cir. 2006).   Plaintiffs have also not met their burden to show that these facts were actually known by "appropriate persons" – in this case the administration of Davis High School.

Plaintiffs' first facts are about Ms. Altice's personal life—that she was having romantic relations with people other than her husband, and that she requested the assistance of the school in stopping their harassment of her.[6] These facts are wholly unrelated to the potential for any

---

[6] Pls.' Mem. at 17, nn.56–58.   The allegation that "Ms. Altice was having a relationship with one of the school's P.E. teachers" would also fall into this category.   Pls.' Mem. at 19 & n.65. That assertion—based on a handwritten statement, with no foundation of the author nor of the declarant, and no context, is inadmissible.

teacher to harass students.   *Id.* at 1154 ("The instances of [a teacher] dating two non-traditional students nearly his own age do not provide [the college] with any knowledge that [the teacher] posed a substantial risk of sexual harassment to [the college's] students … even though one of these relationships may have been improper ….").

Next, Plaintiffs discuss four e-mails from allegedly concerned parents about Ms. Altice's classroom conduct.[7]   Complaints from parents "of other students charging only that [the teacher] made inappropriate comments during class [is] plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student."   *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998). These reports, which were made more than 6 years before the events at issue in this case, [8] are also too old and remote to put any district official on notice. *Escue*, 450 F.3d at 1154.

Plaintiffs then raise allegations that Ms. Altice had sexual contact with students at Sunset Junior High.[9]   Even if the Court takes this inadmissible evidence into account,[10] it is insufficient. The boy who spoke to a school counselor about having sex with Ms. Altice recanted almost immediately.[11]   It was vague. *Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951, 968 (N.D. Okla. 2016) (recognizing "vague" report of potential abuse was not sufficient to put university on notice of threat of harm).   It was also never reported to an appropriate school official.[12]

---

[7]  Pls.' Mem. at 18–19, nn.60–64, 66.
[8]  Altice Dec. App'x Ex. 1, ¶¶ 4, 20-22, 26.
[9]  Pls.' Mem. at 19–21, nn.67–71.
[10]  *See* District Defs. Obj. to Pls.' Facts filed herewith.
[11]  Investigative Report, Subject: C.H., Supp. App'x Ex. 27 at 1, 5.
[12]  *See id.* (noting that the school counselor communicated the allegation to the School Resource Officer, which she believed made the allegation "properly reported").

There is no evidence that the other complaining student who reported allegedly improper behavior about Ms. Altice (only after Ms. Altice had been arrested), made any allegations before then.[13]   And post-arrest attempts to confirm her allegations showed that they were untrue.[14] Plaintiffs have provided no evidence that any District administrator or "appropriate person" had any knowledge of these accusation.[15]

The final set of facts contain more, vague accusations that Ms. Altice played inappropriate music, allowed students to stay in her classroom, was unprofessional, or dressed or acted sexy.[16] Again, these acts are not sufficient to put administrators on notice that Ms. Altice may have sexually abused students.  *Escue*, 450 F.3d at 1154.   This is likely why a Sunset counselor and principal both reported to police (after Ms. Altice had been arrested), that they had no concerns about her sexually assaulting students.[17]

Plaintiffs' Sunset Junior High evidence is infirm for another reason: Plaintiffs have not demonstrated that any of this evidence was received by "appropriate persons." An "appropriate person" is "a school official who has the authority to halt known abuse."  *Murrell*, 186 F.3d at 1247. In this case, such an "appropriate person" must be the Davis High administrators. Plaintiffs never attended Sunset Junior High.[18] No one at Sunset Junior High would have had the

---

[13] *Cf.* Investigative Report, Subject: J.J.N., Supp. App'x Ex. 25 at 1; Investigative Report, Subject: C.H., Supp. App'x Ex. 27 (witness doesn't remember any reports of sexual misconduct, possible reports of kids hanging out in Ms. Altice's room).

[14] Investigative Report, Subject: A.M., Supp. App'x Ex. 26 at 1–2 (denying any sexual relationship and denying that he ever received nude photos).

[15] *See id.*

[16] Pls.' Mem. at 20, n. 69; 21 n.72.

[17] Investigative Report, Subject: C.H., Supp. App'x Ex. 27; Kaysville Police Report, Pls. Ex. 107-1. ("[Sunset Principal] Mr. Swanson … reported that Brianne had not ever been suspected of inappropriate contact with students.").

[18] *E.g.* Guild-Wolff Dep., App'x Ex. 8, at 12:9–13:1; Tamayo Dep., App'x Ex. 9, at 27:19–23.

ability to "address the alleged discrimination and to institute corrective measures" to protect the Plaintiffs from sexual harassment, particularly with the lack of knowledge they had about any serious risk of harm to any student, much less a future, unknown high school student. *Gebster*, 524 U.S. at 290; *cf. Doe v. School Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1255 (11th Cir. 2010) (agreeing with the parties that a former principal of the school the alleged victims attended could be an "appropriate person" for Title IX liability).

None of the Sunset Junior High facts were known to the Davis High Administration.[19] They are otherwise insufficient to put the District on actual notice of a risk of harm.

### 2. The Allegations from Davis High Do Not Put the District Defendants on Actual Notice of Harassment.

Plaintiffs' allegations involving Davis High do not put the District Defendants on actual notice of harassment as a matter of law either. A significant portion of Plaintiffs' Response is dedicated to the statements of Shawna Warrick, the photographer of the "photos in the park" of Ms. Altice and Plaintiff Tamayo in the summer of 2013.[20]   But Plaintiffs have no proof that any of the statements Ms. Warrick made to the *criminal investigator* one year after Ms. Altice was arrested—including that the files were located in a folder entitled "Romance in the Park" or that Ms. Warrick's husband believed the encounter was "touchy feely"—were ever made to Principal Burton (or any "appropriate person") at any time.[21]

---

[19] Burton Supp. Decl., App'x Ex. 23, ¶¶ 3–5.
[20] Pls.' Mem. at 22.
[21] *Id.* at 22, 26.   Plaintiffs also dispute whether Ms. Warrick was truly anonymous.   Plaintiffs have no evidence to indicate that Principal Burton had any knowledge of the identity of the photographer at the time the photos were received.   And evidence is to the contrary. Burton Supp. Decl., App'x Ex. 23, ¶¶ 3–5. But the Davis High Administration's knowledge of the photographer has no relevance here.   Because of Ms. Warrick's apparently contentious past

The pictures themselves did not provide the school with actual notice of abuse.   There is no dispute that the pictures showed no sexual or romantic contact.[22] Plaintiff Tamayo himself admitted that that the encounter was not sexual or romantic.[23]  The pictures were simply of conduct "of a different type than the ultimate misconduct."   *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. Appx. 445, 450–51 (10th Cir. 2010) (ord. & j. not selected for publication).

Plaintiffs include more e-mail complaints about Ms. Altice's classroom behavior,[24]  but again, nothing in these e-mails would indicate that Ms. Altice was a risk for sexual abuse of students. Profanity, "giggling," and allowing students to stay in her room is simply not indicative of a risk of abuse, any more than inappropriate comments made to a class or inappropriate name-calling are.  *Gebster*, 524 U.S. at 292*; Escue*, 450 F.3d at 1154.

Finally, Plaintiffs mention the events of October 2013.   Of course, these allegations put them on notice of a risk of abuse.   But by then, the District had mobilized its resources, began investigating, and, in a matter of days, Ms. Altice was arrested and suspended.[25]

Plaintiffs argue that the test for actual knowledge under Title IX is "more akin to the 'totality of the circumstances.'"[26]  In other words, the District Defendants *should* have been on notice that *something might happen* because Ms. Altice used profanity, dressed in tight clothes, may have

---

history with Ms. Altice, Investigative Report, Subject: Roamnce in the Park, Supp. App x. 24, at 1, and her and her husband's desire to "play[] detective" and catch Ms. Altice with a person who "was not Brianne's husband,", *id*. at 2, those facts would actually support the District Defendants' claims that they did not have actual knowledge of sexual abuse and that they took all reasonable steps in response to the pictures presented to them.

[22]  Photos, App'x Sealed Ex. 22.

[23]  Tamayo Dep., App'x Ex. 9, at 63:20–64:21; Burton Decl., App'x Ex. 2, at ¶ 10, Firmage Decl., App'x Ex. 3, at ¶ 11.

[24]  Pls.' Mem. at 22–23, nn.80–82.

[25]  E.g., Burton Statement, App'x Ex. 14, at State Def. Initial Discl. 00127.

[26]  Pls.' Mem. at 24.

7

failed to maintain discipline, was rumored to have affairs with other (adult) men, met a student in a park for lunch over the summer, and allowed students to remain in her room.   Plaintiffs provide no citation for that proposition, and that's because there is none. These facts, which might have provided District Defendants "knowledge that would cause a reasonable person to investigate further," or put them on "inquiry notice," is absolutely insufficient for Title IX liability.   *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 872 (7th Cir. 2012) (Posner, J.); *see Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951, 976 (N.D. Okla. 2016) (distinguishing "inquiry notice," sufficient for negligence liability, from the Title IX "actual knowledge" standard).   Title IX does not require school administrators to review all a teacher's life choices, their dress, and their general classroom performance to evaluate whether they will be a sexual predator.

Plaintiffs cite to an Eleventh Circuit case, *Doe v. School Board of Broward County, Florida*, in support of the claims.   604 F.3d 1248 (11th Cir. 2010).   The case is distinguishable.   There, notice to the administrators came in the form of first-person victim reports that a teacher had repeatedly, actually, physically, and sexually molested two female students while the students were alone in a classroom with the teacher. *Id.* at 1259.   This constituted "lesser harassment" than that inflicted on the plaintiff in the *Doe* case (an alleged violent sexual assault), which the Eleventh Circuit determined to still be sufficient to put the District Administrators on notice.   *Id.* But it was still *harassment*.   Plaintiffs seek to attribute "actual knowledge" to the Davis High Administration based on facts far below those known in *Doe*, or any Tenth Circuit precedent.

### B.   The District Was Not Deliberately Indifferent to Any Risks to Which It Was Aware.

Likewise, Plaintiffs have failed to meet their burden on the "deliberate indifference" element. Plaintiffs again repeat the allegations from Sunset Junior High, and the other rumors and

irrelevant actions of Ms. Altice at Davis High.   Because they did not have knowledge of sexual abuse, those facts are irrelevant to the deliberate indifference test.

As discussed in Defendants' original Memorandum, the District Defendants took reasonable action when presented with information giving them knowledge.   They involved the school's resource office.   They took action appropriate to the circumstances presented to them, and when serious allegations were presented to them, they engaged in an investigation and took action.   The District Defendants are entitled to summary judgment.

### C.  The Plaintiffs Must Prove They Endured "Severe, Pervasive, and Offensive" Sexual Harassment Caused by the District, Over Which the District Had Control.

Finally, for the reasons stated in Defendants' Original Memorandum, Plaintiffs have not presented any evidence showing that any alleged deliberate indifference "caused" Plaintiffs "to undergo harassment or make them liable or vulnerable to it." *Rost ex Rel K.C v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d, 1124 (10th Cir. 2008).

Neither Plaintiff has shown that an appropriate person employed by the District had knowledge of a risk of the type of harassment alleged by Plaintiffs, nor that the District was deliberately indifferent to the harassment, nor that the administrators' actions caused them to be subjected to severe, pervasive, and unreasonable harassment.   The District is entitled to summary judgment on Plaintiffs' Title IX claims.

III.     **Defendants Did Not Violate Plaintiffs' Civil Rights Under 42 U.S.C. § 1983**

A.  *Defendants Are Not Liable for Sexual Harassment Under the 14th Amendment Equal Protection Clause.*

  1.  **District is Not Liable Under a Hostile Educational Environment Theory.**

To prevail on a claim for hostile educational environment against the District, "a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the [school], or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249 (citations omitted).   If there is no official policy of discrimination, then a school may be liable "if the discriminatory practice is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'"   *Id.* (citations omitted).

Plaintiffs have put forward no official policy of the school condoning discrimination (and there is none).   Acts "directed solely at [the plaintiff] do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter."   *Id.* (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 & n.56). And plaintiffs have no evidence that the principals, vice-principals, or teachers accused here have any sort of "final policymaking authority" to establish entity liability "on the basis of a decision specific to a particular situation.   *Id.* (citations and quotations omitted) (granting school district's motion to dismiss on § 1983 equal protection theory where plaintiff alleged that she reported student-on-teacher sexual abuse but administrators took no action).

Plaintiff cites *Escue v. Norther Oklahoma College* for the proposition that the District can be liable for "hostile environment harassment" actionable under § 1983.   450 F.3d 1146, 1157 (10th Cir. 2006).   But the § 1983 claim at issue in that case was one against *the harasser himself*.   *Id.* at 1156 ("Arguments Pertaining to Defendant Finton.").   Similarly, *Doe v.*

10

*Hutchinson* is also about whether the allegedly harassing teacher himself could be liable for a hostile education environment under § 1983. 728 F. App'x 829, 831 (10th Cir. 2018) (ord. & j. not selected for publication). And the *Oncale* and *Hicks* cases cited by Plaintiff are Title VII cases, where vicarious liability is the rule.[27]

The only arguably relevant case cited by Plaintiffs is *J.M. ex rel. Morris v. Hilldale Independent School District*, 397 F. App'x 445 (10th Cir. 2010) (ord. & J. not selected for publication). There, the Tenth Circuit affirmed the trial court's denial of summary judgment to the school district because the plaintiff provided sufficient evidence to show that, despite a written policy a jury could find that "there was no one in charge of investigating complaints of sexual abuse," and because the facts of the plaintiff's victimization were forwarded on to the school superintendent, who, as a potential final policymaker, took no action. *Id.* at 456–57. Plaintiffs cannot meet that burden here. Plaintiffs have no evidence that there was "no one in charge of investigating complaints of sexual abuse," because when complaints of *sexual abuse* were made, the District Defendants immediately investigated, along with the School Resource Officer at the district.[28]

The District is entitled to judgment on Plaintiffs' § 1983 equal protection claims.

## 2. Individual Defendants Cannot Be Held Liable Under Equal Protection Clause Because They Had No Knowledge of Harassment.

_____

[27] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987). Those cases—and the standards discussed therein— do not apply to *government entity liability* in a § 1983 claim.

[28] *See* District Defs. Mem. at 24. Plaintiffs may be referring to the allegations of sexual abuse made while Ms. Altice was employed at Sunset Junior High. Regardless of the fact that the Individual Defendants did not have knowledge of those complaints, e.g. Burton Supp. Decl., Supp. App'x Ex. 24, ¶¶ 3–5, the only evidence offered by the Plaintiffs show that they *were* investigated—and were immediately recanted. *See* Investigative Report, Subject: C.H., Supp. App'x Ex. 27 at 1, 5.

For individuals to be liable for § 1983 harassment, Plaintiffs must show that the conduct of the *District Defendants* was "sufficiently severe or pervasive as to interfere unreasonably with [their] school performance and create a hostile or abusive educational environment." *Escue,* 450 F.3d at 1157.   They have not done so.

The Individual District Defendants did not, themselves, sexually harass Plaintiffs. "Therefore, to impose liability on [the Individual Defendants] for [Altice's alleged] constitutional violation, [Plaintiffs] must establish … liability in a supervisory capacity." *Doe v. Sch. Bd. of Broward Cnty. Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010).   Under § 1983, a supervisor may only be liable if she "participates in or consciously acquiesces in sexual harassment by an outside third party or the employing entity has a policy or custom of allowing such sexual harassment in the workplace."   *Noland v. McAdoo*, 39 F.3d 269, 271–72 (10th Cir. 1994) (citations and quotations omitted); *accord Murrell*, 186 F.3d at 1250.   Supervisors are not liable for § 1983 sexual harassment committed by others unless the "supervisor had actual knowledge of the harassment but failed to take remedial action …." *Johnson v. Martin*, 195 F.3d 1208, 1219 (10th Cir. 1999).

Plaintiffs argue that the Individual Defendants in this case can be held liable under *Doe* because of a "history of widespread abuse" and an "improper custom or policy result[ing] in deliberate indifference to constitutional rights."   *Doe*, 604 F.3d at 1266. This standard is not the law in the Tenth Circuit.   And even if it was, the Individual District Defendants would not be liable under it.

The first part of this standard—a history of widespread abuse—has not been articulated by the Tenth Circuit as a basis for liability.   Rather, the Tenth Circuit requires "proof of personal

direction or of actual knowledge and acquiescence." *Johnson*, 195 F.3d at 1219. A showing that a supervisor "should have known that sexual harassment was going on and failed to stop it" is insufficient. *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992). Knowledge that past incidents of sexual harassment by an employee on one victim is insufficient for supervisors to be liable for the sexual harassment of a subsequent victim by the same employee. *Ferencich v. Merritt*, 79 F. App'x 408, 416 (10th Cir. 2003) (ord. & j. not selected for publication) (citing *Woodward*, 977 F.2d at 1399). Rather, the Individual Defendants would have to have "received notice of a pattern of violations of …. students' constitutional rights to be free of sexual abuse at the hands of the school district's employees." *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995) (citations and quotations omitted).

The Individual Defendants did not have actual notice of a "pattern of constitutional violations" as required by *Jojola*. And even if the *Doe* standard were followed, Plaintiffs cannot meet it as a matter of law. "For a history of abuse to be sufficiently widespread to put a supervisor on notice, the abuse must be 'obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *Doe*, 604 F. 3d at 1266. This is an "extremely rigorous" standard. *Id.* (internal citations omitted).

In this case, there is not a sufficient history of widespread abuse to put the individual defendants on notice. Unsubstantiated rumors, inappropriate music, and hugs are not enough. *Jojola*, 55 F.3d at 491. A failure to adequately investigate rumors of inappropriate conduct is not enough. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1043 (10th Cir. 1992). Even though Ms. Altice had improper sexual conduct with three boys, the administration received

information about those allegations roughly all at the same time.[29]   They had no knowledge of any history of widespread abuse or knowledge of a pattern of constitutional violations.

For these reasons, the Individual Defendants cannot be held liable under the Equal Protection Clause.

### B. Defendants Are Not Liable for Under the 14th Amendment Due Process Clause.

Plaintiffs' due process claims are also insufficient, either under the "special relationship" or "danger creation" theories.

### 1.   A Special Relationship Did Not Exist Between Teacher and Student.

Plaintiff argues that a special relationship exists between a school district and its students sufficient to trigger due process liability.   However, in support of that claim, Plaintiffs cite to two tort cases that explain that a special relationship *may* arise between a school and a child in limited circumstances when the school has sufficient custody and control over a child. *Young v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, 1233 (Utah 2002); *Norton v. Canandaigua City Sch. Dist.*, 208 A.D.2d 282, 285–86 (N.Y. App. Div. 1995). But the "special relationship" described in these cases is one which creates a *duty of reasonable care* under tort law, not a "special relationship" establishing *due process rights* under the U.S. Constitution.   *Cf. id.*

The "special relationship" test to trigger due process liability is different: Whether a defendant restrains a Plaintiffs' liberty to the extent that they were unable to care for their own basic needs. *DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989). "[C]ompulsory attendance laws do not impose the severe restraints on individual liberty that implicate the Due Process Clause of the Fourteenth Amendment." *Maldonado v. Josey*, 975 F.2d 727, 733 (10th Cir. 1992);

---

[29] E.g. Burton Statement, App'x Ex. 14, State Def. Initial Discl. 000127.

*see also Seamons v. Snow*, 84 F.3d 1226, 1235–36 (10th Cir. 1996) (holding no due process

claim against school district when plaintiff was assaulted by other school children).   As such, no

special relationship that would implicate the Due Process Clause of the Fourteenth Amendment

existed.

### 2.   The "Danger Creation" Exception Does Not Apply.

Plaintiffs also fail to show that the danger creation exception exists in this case. The Due

Process Clause protects against "deliberately wrongful government decisions rather than merely

negligent government conduct." *Uhlrig v. Harder*, 64 F.3d 567, 573–74 (10th Cir. 1995).   The

key to the danger creation exception "lies in the state actors' culpable knowledge and conduct in

affirmatively placing an individual in a position of danger, effectively stripping a person of her

ability to defend herself." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d

1253, 1263 (10th Cir. 1998). The state actors must knowingly create the environment. *Id.*

Plaintiffs cannot show an intent of the Defendants to harm Plaintiffs or place them

unreasonably at risk of harm. Plaintiffs' allegations of the District Defendants failing to properly

investigate complaints or enforce a sexual harassment policy is at most negligence, not deliberate

misconduct. *Rost*, 511 F.3d at 1126. Ordinary negligence is not sufficient to "shock the

conscience." *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002).

Neither the District, nor the Individual Defendants, are liable for any Fourteenth

Amendment violations, and Plaintiffs' claims should be dismissed.

### IV.   The District Defendants Are Entitled to Summary Judgment on Plaintiffs' Common-Law Claims.

Finally, the District Defendants are entitled to summary judgment on Plaintiffs' common-

law tort claims.   Such claims are barred procedurally and substantively.

**A.   *Plaintiffs' State Tort Claims Are Barred Because They Failed to File an Undertaking.***

Plaintiffs' state-law claims must be dismissed because they failed to file an undertaking as required by the Governmental Immunity Act of Utah. Utah Code § 63G-7-601(2).   Plaintiffs argue that this is a "curable defect in this case."[30] But it is not.

This case is "governed by the statute in effect at [the] time" of the "relevant events." *Clegg v. Wasatch Cnty.*, 2010 UT 5, ¶ 12 n.2, 227 P. 3d 1243, 1247.   Though the Immunity Act *now* provides a "savings clause," allowing a plaintiff to re-file a claim against a governmental agent or entity within one year after a dismissal without prejudice, Utah Code § 63G-7-403(3)(b), that provision was not in the 2013 version of the Act.[31]   It should not be applied retroactively.   Utah Code § 68-3-3.

As a result, under the 2013 Act, Plaintiffs' state tort claims must be dismissed with prejudice. Utah Code § 63G-7-601(2) (2013); *Craig v. Provo City*, 2016 UT 40, ¶¶ 1, 2, 6, 18, 41, 389 P.3d 423, 423–24, 426, 432; *see also Hyland v. Dixie St. Univ.*, No. 2:15-cv-36-TS, 2017 WL 2123839 at *2 (D. Utah May 16, 2017) (mem. decision and ord. not selected for publication).[32]

**B.   *Claims Against the Individual School District Defendants Are Barred.***

The state tort claims are barred against the Individual District Defendants.   To prevail, Plaintiffs must show the Individual District Defendants acted with "willful misconduct," – "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury."   Utah Code §

---

[30] Pls.' Mem. at 37.
[31] *See* 2017 Utah Laws Ch. 300 (H.B. 399), § 4(3) (codified at Utah Code § 63G-7-403(3).
[32] Even accepting Plaintiffs' arguments, the claims would still have to be dismissed; they would just be dismissed without prejudice.   *Hansen v. Salt Lake Cnty.*, 794 P.2d 838, 840 (Utah 1990).

63G-7-102(10).

But Plaintiffs provide no evidence or case law showing that any Individual District Defendant both "(1) … intentionally performed a wrongful act [and] (2) … [had] an awareness that injury will likely result." *Salo v. Tyler*, 2018 UT 7, at ¶ 41, 417 P.3d 581, 590.

Some of the facts asserted by Plaintiffs to support their claim of "willful misconduct" are barred by their previous admissions.[33]   Other facts are simply innocuous demerits on what would be assumed to be appropriate conduct by a teacher.   Plaintiff has provided no proof that any individual defendant had knowledge of any of these facts, much less that, with knowledge, any defendant "intentionally" engaged in the "wrongful failure to act" with a subjective "awareness that injury will likely result." Utah Code § 63G-7-102(10); *Salo*, 2018 UT 7, at ¶ 41, 417 P.3d at 590.   Plaintiffs cite no case for such an expansive reading of the immunity exception. And no case exists standing for that proposition. The claims should therefore be dismissed.

### C.  *Tort Claims Against the District Are Barred.*

Finally, as described in Defendants' original Memorandum, the tort claims against the District are barred because they arise out of an assault, battery, deceit, infliction of mental anguish, or violation of civil rights.   Utah Code § 63G-7-301(5)(b).   The Utah Court of Appeals has determined that claims against *this* District for negligence arising out of harm caused by *this* teacher when engaging in sexual contact with a different student (though in nearly the identical time period) fell under this exception to the waiver of immunity.   *Larsen v. Davis Cnty. Sch. Dist.*, 2017 UT App 221, ¶ 24, 409 P.3d 114, 120.

---

[33] *See* Pls.' Mem. at 38.

While recognizing the existence of the *Larsen* case, Plaintiffs seem to request that the Court deny the motion for summary judgment so that "justice may be served."[34] However, the Court is not free to disregard the case.

There is no independent common law for federal courts to develop when reviewing or evaluating state law claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Rather, "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle,* 305 F.3d 1107, 1118 (10th Cir. 2002). If the state supreme court has not issued a decision on a point of law, "the federal court must attempt to predict what a state's highest court would do." *Wankier v. Crown Equip. Corp*., 353 F.3d 862, 866 (10th Cir. 2003). A decision from an intermediate appellate court "is a datum for ascertaining state law which is not to be disregarded … unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940).

In this case, there is an on-point decision from the Utah Court of Appeals. Larsen, 2017 UT App 221, at ¶ 24, 409 P.3d at 120. Certiorari to the Utah Supreme Court was denied. 421 P.3d 441 (Utah May 07, 2018) (table) (denying certiorari). Plaintiffs have provided no other "persuasive data" indicating that the Utah Supreme Court would have ruled contrary to the Utah Court of Appeals, and the Court is not free to disregard the Court of Appeals' opinion on this issue of state law. Accordingly, the District is entitled to summary judgment.

---

[34] Pls.' Mem. at 39.

# CONCLUSION

The District Defendants are entitled to summary judgment. As to the Title IX claims, appropriate persons did not have the requisite level of knowledge to put them on notice to remedy any risk of sexual harassment by Ms. Altice on Plaintiffs. And their responses when presented with risks were reasonable.

Plaintiffs' new—and unsupported—facts do not change the analysis.   Plaintiffs expect the District Defendants to take preemptive, punitive action against Ms. Altice based on rumor and innuendo (to which they had no personal knowledge); her rumored sexual history with other adults; the economic and social status of the students she interacted with; the way Ms. Altice dressed, walked, and talked; and even the music she listened to.   These are the same, unsound prejudices that victims' rights advocates have argued for years to be excluded from consideration in sexual assault and sexual harassment cases.[35]   By suggesting this evidence would support Title IX liability, Plaintiffs would require school districts in general—and the District Defendants in this case—to engage in preemptive discipline and shaming[36] of any female

---

[35] *E.g.* Theresa L. Lennon, Sharron J. Lennon, and Kim K.P. Johnson, "Is Clothing Probative of Attitude or Intent? Implications for Rape and Sexual Harassment Cases," 11 Law & Ineq. 391 414–15 (1993) ("[Jurors] are likely to believe and act on the belief that a woman can contribute to her victimization by the way she dresses.   Because such inferences have been shown to be inaccurate and because jurors are likely to make them, the law needs to prevent that evidence from reaching the jury.").

[36] "Slut-shaming," Wikipedia, http://en.wikipedia.org/wiki/Slut-shaming (last visited November 29, 2018) ("Slut shaming is the practice of criticizing people, especially women and girls, who are perceived to violate expectations of behavior and appearance regarding issues related to sexuality.); Brian N. Sweeney, "Slut shaming," *The SAGE Encyclopedia of Psychology & Gender*, *available at* http://sk.sagepub.com/the-sage-encyclopedia-of-psychology-and-gender/i15927.xml (last visited November 29, 2018) ("Slut shaming refers to deliberate efforts to discredit people by associating them with sexual deviancy….).

teachers who dress, behave, or are rumored to have behaved in a way slightly different from conservative norms.   This gender-imbalanced scrutiny[37] is the opposite of what Title IX requires. The District Defendants had no knowledge of facts to put them on notice of a specific threat of real harm as required by Tenth Circuit precedent. The Title IX claims should be dismissed.

Plaintiffs' § 1983 claims also fail.   They have not identified a policy or practice to subject the District to liability, and they have not met their burden to show any supervisory liability on the part of any of the Individual District Defendants. They appeared to have conceded that their state tort claims cannot withstand a dispositive motion, and the Court should reject their invitation to deny the motion purely in the interests of justice.

The District Defendants were shocked and saddened when it was discovered that their minor students had sex with one of their teachers. No doubt, these actions were criminal, were outrageous, and may cause serious long-term psychological or other harm to Plaintiffs.[38] But the core issue of this motion is not whether a tragic, awful thing happened to Plaintiffs, but whether the District, and the Individual Defendants, are monetarily liable to Plaintiffs for *their actions* surrounding these incidents.   For the reasons stated above, they are not. Accordingly, the District Defendants respectfully request that the Court grant their motion, and dismiss all claims against them.

---

[37] *See id.*
[38] *See, e.g.*, Sarah G. West, M.D., Susan Hatter, S Friedman, MD & James L. KNowll IV, MD, "Lessons to Learn, Female Educators Who Sexually Abuse Their Students: Page 2 of 2," *Psychiatric Times*, http://www.psychiatrictimes.com/sexual-disorders/lessons-learn-female-educators-who-sexually-abuse-their-students/page/0/1 (last visited December 6, 2018).

DATED:   December 7, 2018

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Kyle J. Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
*Counsel for District Defendants*

## CERTIFICATE OF MAILING

I certify that on 7th day of December, 2018, I electronically filed the foregoing,
**DISTRICT DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**, using the Court's electronic filing system. I also
certify that a true and correct copy of the foregoing was placed in outgoing, United States mail,
postage prepaid, and marked "Legal Mail" to the following:

Brianne Land Altice, No. 222952
Utah State Prison
PO Box 250
Draper, UT 84020-0250

   */s/ Kara Imai*

21