DEREK G WILLIAMS (14503)
497 N. Main Street
Kaysville, UT 84037
Telephone:  (801) 893-9529
dwilliams@wasatchlegalservices.com

---

IN THE UNITED STATES DISTRICT COURT IN AND
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| JOSEPH GUILD-WOLFF<br><br>               Plaintiff,<br><br>v.<br><br>DAVIS COUNTY SCHOOL DISTRICT, BOARD OF EDUCATON OF THE DAVIS SCHOOL DISTRICT, BRIANNE LAND ALTICE, BRYAN BOWLES, DEE BURTON, RICHARD FIRMAGE, KATHY EVANS, SCOTT NIELSEN, and DOES 1-10.<br>               Defendants.<br><br>And<br><br>ADRIAN PEREZ-TAMAYO, GINA MUSCOLINO, and JOSE PEREZ-TAMAYO<br>               Plaintiffs,<br><br>v.<br><br>DAVIS COUNTY SCHOOL DISTRICT, BOARD OF EDUCATON OF THE DAVIS SCHOOL DISTRICT, BRIANNE LAND ALTICE, BRYAN BOWLES, DEE BURTON, RICHARD FIRMAGE, KATHY EVANS, SCOTT NIELSEN, and DOES 1-10.<br>               Defendants. | **RESPONSE TO DISTRICT DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:15-cv-0162<br>Case No. 1:15-cv-0157 (consolidated)<br><br>Judge Robert J. Shelby |

# TABLE OF CONTENTS

TABLE OF AUTHORITES…………………………………………………………………2

STATEMENT OF UNDISPUTED MATERIAL FACTS…………………………………4

LEGAL STANDARD ……………………………………………………………………… 16

LEGAL ARGUMENT ……………………………………………………………………… 16

1.   THE DISTRICT DEFENDANTS DID VIOLATE TITLE IX. ……………………… 16
     a. The Defendants' had Actual Knowledge ……………………………………18
     b. The Defendants are Appropriate Persons …………………………………… 25
     c. THE RESPONSE OF THE DEFENDANTS WAS DELIBERATE INDIFFERENCE……………………… 26
     d. PLAINTIFFS ENDURED SEVERE, PERVASIVE, AND OFFENSIVE SEXUAL HARASSMENT THE
DISTRICT COULD HAVE CONTROLLED …………………………………………………… 31

2.   DEFENDANTS DID VIOLLATE PLAINTIFFS' CIVIL RIGHTS UNDER ………………………32
     A.   THE DISTRICT IS LIABLE FOR SEXUAL HARASSMENT UNDER THE 14TH AMENDMENT EQUAL
PROTECTION CLAUSE. ………………………………………………………………………………32
     B. .   INDIVIDUAL DEFENDANTS ARE LIABLE FOR SEXUAL HARASSMENT UNDER THE EQUAL PROTECTION
CLAUSE. ………………………………………………………………………… 33
     c. School District and District Defendants Are Liable for a Fourteenth Amendment Due
Process Violations…………………………………………………………………………35
       i.   A Special Relationship Exists Between Teacher and Student. ………………………… 35
       ii.   The "Danger Creation" Exception Does Apply……………………………… 35

3.   DISTRICT DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS;
COMMON-LAW CLAIMS. ………………………………………………………………… 36
     A. PLAINTIFFS' TORT CLAIMS SHOULD NOT BE BARRED FOR FAILURE TO FILE AN UNDERTAKING. …… 36
     B. CLAIMS ARE NOT BARRED AGAINST INDIVIDUAL DEFENDANTS. ……………………………… 37
     c. Tort Claims Against The District Should Not Barred…..……………………………40

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal, 556 U.S. at 768, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)* ..............................14

*Baynard v. Malone, 268 F.3d 228, (4th Cir. 2001)*.......................................................................23

*Cannon v. Univ. of Chicago, 441 U.S. 677 (1979)*.......................................................................15

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ., 526 U.S. 629, (1999)*............30

*Davis v. Monroe County Bd. of Educ., 526 U.S. 650, (1999)*......................................................15

*Doe v. Hutchinson, 128 Fed.Appx. 829, (2018)*....................................................................31, 32

*Doe v. School Bd. of Broward County, Fla., 604 F3d 1259 (2010)* ........................14, 23, 30, 32

*Escue v. N. Okla. Coll., 450 F.3d 1146, (10th Cir. 2006)*.....................................................23, 30

*Franklin v. Gwinett Cnty. Pub. Sch., 503 U.S. 60, (1992)*..........................................................15

*Gebster v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, (1998)*......................................15, 23, 24

*Hartley v. Parnell, 193 F.3d 1263, (11th Cir. 1999)* ...................................................................32

*Hicks v. Gates Rubber Co., 833 F.2d 1406, (10th Cir. 1987)*......................................................31

*J.M.ex rel. Morris v. Hilldale Independent School Dist. No. 1-29, 397 Fed.Appx. 450...*15, 22, 25, 31

*Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, (2005)* .......................................................15

*Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1247 (10th Cir. (1999)*...................24, 25, 30

*Norton v. Canadaigua City School Dist., 208 A.D.2d 282, (1995)*................................................34

*Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, (1998)*................................................31

*Oshea v. Yellow Tech Servs., Inc., 185 F3d 1093, (10th Cir. 1999)* ............................................31

*Rost Ex Rel. KC v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114 (10th Cir. 2008)*..........27

*Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir. 1988)*..............................14

## State Cases

*Hasen v. Salt Lake Cnty., 794 P.2d 838, (1990)*........................................................................36

*Larsen v. Davis Cnty. Sch. Dist. 409 P.3d 114,125 (2017)*..................................................37, 38

*Pratt v. Robinson, 39 N.Y.2d 554, N.Y.S.2d 749, 349 N.E.2d 849, (1976)* ...............................33

*Young v. Salt Lake School Dist., 52 P.3 1230, (2002)*..........................................................33, 34

## Federal Statutes

*20 U.S.C. § 1681 (a)* ..................................................................................................................15

42 U.S.C. § 1983 ...........................................................................................................................30

## State Statutes

*Utah Code § 63G-7-202.*..............................................................................................................35

*Utah Code § 63G-7-403 (3) (b) (ii)* .............................................................................................36

*Utah Code § 63G-7-403 (3) (b).*..................................................................................................36

*Utah Code § 63G-7-601 (2).*........................................................................................................35

*Utah Code § 63G-7-601 (2)(a).*....................................................................................................35

## Other Authorities

*Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2, No. 11-CV-02107-PAB-KLM, 2012 WL 4378162, at *4, n.2 (D. Colo. Sept. 25, 2012)* .......................................................................24

*Restatement (Second) of Torts § 320* ................................................................................33, 34

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Admit and Deny for lack of information and belief.

The allegation that "Sunset Junior High administrators assured the administrators of Davis High of Mrs. Altice's competency, and no one at Davis High knew or heard of any concerns, or rumors, about Mrs. Altice." is not supported by the Burton Declaration.[1]

Burton Declaration No.5 makes no reference to Sunset Junior High making any representation of Mrs. Altice's competency to the administration of Davis High School.  Nor does Burton Declaration No.5 make any reference to anyone at Davis High School not hearing any concerns, or rumors, about Mrs. Altice. [2]

Not only does Burton Declaration No.5 not support the Defendants' representation of Burton Declaration No.5, nothing in Burton's Declaration would support the States claim that "Sunset Junior High administrators assured the administrators of Davis High of Mrs. Altice's competency, and no one at Davis High knew or heard of any concerns, or rumors, about Mrs. Altice.".

On the contrary, many complaints about Mrs. Altice were made to the administration of Sunset Junior High, including the Principal, Mr. Swanson.  One such complaint was made from Shawna Warrick, a co-worker of Mrs. Altice at Sunset Junior High. [3]

Mrs. Warrick describes being in the classroom of Mrs. Altice, as an aid to a student, when Mrs. Altice would stand on a chair and with her backside toward the class would "wiggle herself all the way up", while lowering a movie screen.  Mrs. Warrick said it happened frequently.  Mrs. Warrick also describes Mrs. Altice having students in her classroom when they were not supposed to be. [4]

---

[1] *Burton Decl. ¶ 5.*
[2] *Id.*
[3] *Investigative Report by Craig Webb Davis County Investigator with Shawna Warrick, Subject: Romance In The Park, 0/13/2014*
[4] *Id.*

Mrs. Warrick complained about Mrs. Altices' behavior to the Principal, Mr. Swanson.  Mr. Swanson said he would look into it.  No record has been found or provided to support that Mr. Swanson did anything to look into or address the improper behavior of Mrs. Altice.[5]

Mrs. Warrick also describes how other teachers at Sunset Junior High would express their concerns about the behavior of Mrs. Altice.  Upon learning that Mrs. Altice was going to teach at Davis High a teacher commented, in the break room, "I give this two years, and we're going to see her on T.V.". [6]

2.      Admit

3.      Admit

4.      Admit and Deny.

At least two written complaints made by parents of students in Mrs. Altices' class, complaining of the inappropriate language and the lack of professionalism and flirting by Mrs. Altice.[7]  These complaints were sent to Dee Burton, Richard Firmage, Scott Nielson, and Kathy Evans.

One complaint indicates that the profanity that Mrs. Altice uses in the classroom is on a daily basis.[8]

The other complaint claims Mrs. Altice is a "flirt and a tease to the boys at Davis High School", that there are boys, not of the class period that "just hang out" and that Mrs. Altice likes the attention and "giggles like a schoolgirl when they flirt with her".[9]

Although Principal Burton claims he received no complaints about the improper attire of Mrs. Altice, Ms. Abendroth, an English teacher across the hall form Mrs. Altice, felt

---

[5] *Id.*
[6] *Id.*
[7] *District Def. Initial Disclosures 000129 & 000130*
[8] *District Def. Initial Disclosures 000129*
[9] *District Def. Initial Disclosures 000130*

differently.  In front of an entire classroom Ms. Abendroth made comments about how Mrs. Altice dresses very inappropriately and should not even be a teacher.[10]

5.     Admit and Deny.

Vice Principal Firmage and Vice Principal Evans would walk the halls and frequently look into Mrs. Altice's classroom and see Joey, Adrian and other boys sitting at Mrs. Altice's desk.  "It was like Joey didn't have a desk".[11]

Other teachers made comments indicating their knowledge that defendants hang out in Mrs. Altice's classroom. [12]

Coach Horn made comments about how good-looking Mrs. Altice was and how "he wouldn't mind being in there all day as well."[13]

Coach Arquette would make frequent comments about how often the boys hung out in Mrs. Altice's classroom.[14]

6.     Deny.

Vice Principal Firmage and Vice Principal Evans received photographs of Mrs. Altice having a picnic in a park with Adrian Perez-Tamayo.  This in and of itself raises "red flags" of an inappropriate relationship with a student. [15]  The photographs in question, were even given the file name "ROMANCE IN THE PARK".[16]

No administrators attempted to make contact with Adrian to discuss the nature of the inappropriate contact.[17]  Likewise, no attempt to make contact with Adrian's parents was made

---

[10] *Dep. Joey of Joey Guild-Wolff 110:19-22*
[11] *Dep. of Cassadi Loyola 55-57*
[12] *Dep. Of Joey Guild-Wolff 109:20-24*
[13] *Id.*
[14] *Id. At 110:15-19*
[15] *Firmage Decl. ¶12, Evans Decl. ¶ 813*
[16] *Investigative Report by Craig Webb Davis County Investigator with Shawna Warrick, Subject: Romance In The Park, 10/13/2014*
[17] *Dep. Adrian Perez-Tamayo 178-179*

to make them aware of the inappropriate contact between a teacher at Davis High and their minor child.[18]

When Gina Muscolino, Adrian's mother, was phoned, by Vice Principal Evans, to inform Mrs. Muscolino that Adrian was acting very "upset" about Mrs. Altice being arrested, Vice Principal Evans assured Mrs. Muscolino that Adrian and Mrs. Altice were merely "good friends".[19]

When Mrs. Muscolino asked Vice Principal Evans if Mrs. Muscolino should notify the authorities of her suspicions that Adrien was involved with Mrs. Altice, Vice Principal Evans told Mrs. Muscolino, "yeah, I probably wouldn't do that" and discouraged Mrs. Muscolino from doing so.[20]

The fact that Joey, Adrian and others would skip classes just to hang out in Mrs. Altice's classroom; and that they would, hang out, in her classroom before school, during lunch, and after school with doors closed, and with lights off, would also raise red flags that Mrs. Altice's conduct is improper.[21]

If other teachers, who don't roam the halls of campus, can recognize the inappropriate conduct of Mrs. Altice, and that Adrian, Joey and others spend an inordinate amount of time in the classroom of Mrs. Altice, then the lack of knowledge by the administration, who are trained and responsible to make sure this misconduct does not occur, should have seen it as well.[22]

The student body was generally aware and spread rumors surrounding Mrs. Altice and who she was having relationships with.[23]

---

[18] *Dep. Gina Muscolino 57:1-58:10*
[19] *Id., Id. at 77:6-78:6*
[20] *Id. at 91:15-92:21*
[21] *Dep. Of Adrian Perez-Tamayo 122:1-21, Dep. Of Joey Guild-Wolff 70:1-73:9*
[22] *Id. at 170:15-176:18*
[23] *Id. at 87:1-89:15, 99:19-23, 105:16-110:23, 146:2146:24, 147:24-148:14, 168:3-170:7, Dep. of Adrian Perez-Tamayo 68:7-68:17*

This demonstrates an ongoing pattern by Mrs. Altice that existed throughout her teaching career beginning at Sunset Jr. High.  One boy confided in his counselor, at Sunset Jr. High, about having sexual relationships with Mrs. Altice.  The boy told the counselor that he had sex with Mrs. Altice three times at her house and was afraid she might be pregnant.[24]

A female student at Sunset Jr. High, reported to her counselor that a male student friend of was hers having a sexual relationship with Mrs. Altice and of seeing nude photos, on his phone, of who she thought was Mrs. Altice.  The female student was told the matter would be taken care of.[25]

The Jr. High boy, referenced in the above paragraph, when contacted by Davis County Investigator Craig Webb, said "I was wondering when you would be calling".  The boy said his friends always thought he had a relationship with Mrs. Altice.  The boy also talked about racking up twenty-five absences to hang out in the classroom with Mrs. Altice, and how he would text with Mrs. Altice.  Mrs. Altice would send him photographs of herself in various outfits that she would wear the next day. The boy noted how, in front of the class, Mrs. Altice took his phone and took a selfie of herself blowing him a kiss.[26]

Conversations were had, in early October, between Administration, at Davis High and Melia Shaw, Melia's Grandmother, and Cassadi Loyola about allegations of a relationship between Mrs. Altice and a student.[27]

7.      Admit and Deny.

---

[24] *Investigative Report by Craig Webb Davis County Investigator with Christy Hutchinson, Subject: Christy Hutchinson, 12/20/2014*

[25] *Investigative Report by Craig Webb Davis County Investigator with Janecia Nichols, Subject: Janecia Nichols, 12/11/2014*

[26] *Investigative Report by Craig Webb Davis County Investigator with Alexjandro Montiel, Subject: Alexjandro Montiel, 12/20/2014*
[27] *Burton Decl. ¶ 21*

The first displays of inappropriate physical contact occurred in Mrs. Altice's classroom and was initiated by Mrs. Altice. Upon Joey's return to Davis High he went to Mrs. Altice's classroom. Upon seeing him, she immediately stopped the class, and in front of the whole class gave him a big hug, took him out to the hall where she gave him another big hug and they talked for ten to fifteen minutes.[28]

The first kiss between Mrs. Altice and her student Joey occurred in her classroom where Mrs. Altice grabbed Joey, by the arm, pulled him closer and began kissing him. The kissing lasted just shy of thirty seconds.[29]

8.    Admit and Deny.

Vaginal intercourse between Mrs. Altice and her student Joey occurred once. However, Mrs. Altice and Joey also engaged in oral sex.[30]

Mrs. Altice continued to have personal contact with Joey until Mrs. Altice and Joey met at the park near Farmington Station where they made out (kissing, "swapping saliva", touching each other's genitals, breasts, et cetera) over the summer of 2013.[31]

Sometime after the meeting at the park, Joey stopped communicating with Mrs. Altice. Mrs. Altice continued to try to contact Joey. Joey eventually blocked Mrs. Altice's contact in his phone. Mrs. Altice even used other "pinger" numbers in attempt to reach Joey. On several occasions Adrian told Joey that Mrs. Altice was trying to reach him and that he needed to talk to her.[32]

9.  Admit and Deny.

---

[28] Dep. of Joey Guild-Wolff 36:10-14, 107:3-17
[29] Id. at 50:14-20, 51:10-13
[30] Id. at 181:13-15
[31] Id. at 67:7-23, 65:14-15
[32] Id. at 77:21-78:23

The inappropriate familiar relationship between Mrs. Altice and Adrian began while Adrian was her student during the school year 2012-2013.  Mrs. Altice suggested Adrian download a texting app so they could communicate more freely.[33]

Sexual intercourse between Mrs. Altice and Adrian began shortly after school started in 2013, where Mrs. Altice took the day off work and invited Adrian to skip school and spend the day at her house.  Adrian was not a student of Mrs. Altice's English class at that time but spent most of his school day in Mrs. Altice's classroom. [34]

10.     Deny.

The relationships between Mrs. Altice and Adrian and Joey were not kept separate from school.  Rumors floated throughout the school about relationships between Mrs. Altice with Drake Larsen (another student Mrs. Altice admitted to having a sexual relationship with), Mrs. Altice with Joey, and Mrs. Altice with Adrian. [35]

When Joey told Vice Principal Firmage that he had sexual relationships with Mrs. Altice, Vice Principal Firmage admitted to Joey that "we thought something was going on".[36]

Mrs. Altice would give Joey money and send Joey to get them some lunch, allowing Joey to take Mrs. Altice's vehicle from the faculty parking lot, knowing Joey did not have a driver's license.[37]

Mrs. Altice had inappropriate sexual contact with both Adrian and Joey on school property in the form of hugs, kisses.[38]

Discussions were made, on school property, during school hours about where and when to meet up where sexual contact would be made.[39]

---

[33] *Dep. of Adrian Perez-Tamayo 58:9-10*
[34] *Id. at 71:18-74:2*
[35] *Id. at 66:9-69:13, Dep. of Joey Guild-Wolff 87:1-90:13*
[36] *Dep. of Joey Guild-Wolff 87:24-88:1, 99:15-23, 104:9-12*
[37] *Id. at 49:12-25*
[38] *Id. at 50:14-22*
[39] *Dep. Adrian Perez-Tamayo 56:3-25*

Text messages were sent at school, during school hours discussing sexual matters. Sexual intercourse would occur during school hours. [40]

The administration was aware that Mrs. Altice met with Adrian off school property. [41]

Adrian did retain romantic letters which were written to him by Mrs. Altice, and photographs of Mrs. Altice and Adrian.  These items along with his computer were seized by Davis County.  The letters and Photos were not returned.  Anything Adrian deleted had already been copied by Davis County. [42]

Sexual contact was seen in school between Mrs. Altice and Joey when Mrs. Altice, upon seeing Joey walk into her classroom, immediately stopped teaching to cross the room and give him a hug, in front of the entire class, then take him into the call for ten to fifteen minutes. [43]

11.     Admit.

12.     Admit and Clarify.

Adrian was delusional with respects to the relationship with Mrs. Altice.  Adrian felt he could protect Mrs. Altice from her criminal charges and they would always be able to be together. [44]

13.     Deny.

As already discussed, rumors about inappropriate relationships between Mrs. Altice and students had been circulating from the time Mrs. Altice was teaching at Sunset Jr. High up to the time of her arrest and beyond.[45]

Complaints had been made by faculty, parents, and students about the unprofessional and inappropriate behavior of Mrs. Altice.

14.     Deny.

---

[40] *Id.*
[41] *Burton Decl. ¶ 10*
[42] *Dep. Adrian Perez-Tamayo 109:17-116:19*
[43] *Dep. Joey Guild-Wolff 36:10-14*
[44] *Dep. Adrian Perez-Tamayo 80:13-15, 137:14-18*
[45] *Id. at 66:9-69:13, Dep. of Joey Guild-Wolff 87:1-90:13*

There were not four photos delivered to Davis High, the file contained seventy-seven photographs.  The photograph file was titled "Romance in the Park" by the taker of the photographs. [46]

The source of the photographs was never anonymous.  Shawna Warrick, along with her husband and daughter took the photographs.  Mrs. Warrick recognized Mrs. Altice as a former coworker at Sunset Jr. High.  Mrs. Warrick knew the reputation of Mrs. Altice and thought the encounter concerning. [47]

Heidi West, a coordinator with Davis School District, told Craig Webb she and several other people were always aware Mrs. Warrick had taken and provided the photos to Davis High.  Mrs. West and Mrs. Warrick did not want Mrs. Altice coming after Mrs. Warrick but was not shy about sharing what she witnessed.[48]

Mrs. Warrick made several complaints to the administration about the improper behavior of Mrs. Altice.  Mrs. Warrick said, upon hearing about the arrest of Mrs. Altice, all the complaints that were made by the staff at Sunset Jr. High were validated.  One teacher even commented, when learning that Mrs. Altice was transferring to Davis High, "I give this two years, and we're going to see her on TV". [49]

Mrs. Warrick sent emails to Vice Principal Evans, making them aware of what Mrs. Warrick witnessed.  Mrs. Warrick also spoke directly, by phone, with Vice Principal Evans about her concerns with Mrs. Altice and some "inappropriate pictures" of Mrs. Altice with a "boy". [50]

15.     Neither Admit nor Deny.

16.     Deny.

---

[46] *Investigative Report by Craig Webb Davis County Investigator with Shawna Warrick, Subject: Romance In The Park, 10/13/2014*

[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*

The very fact that Mrs. Altice is having a private picnic with her student crosses the line toward intimate physical contact.  The pictures depict a date between two non-related members of the opposite sex.  At times, Mrs. Altice is lying and rolling on the ground.  Mrs. Altice and Adrian are touching.  Mrs. Altice pushes against Adrian's pelvic area with her butt.

This event, viewed in light that rumors had circulated around Davis High, that Mrs. Altice was engaging in sexual relationships with students, makes this encounter beyond acceptable, not a mere lapse in judgement.

Mrs. Altice knows the pictures are being taken of her with the student.  Mrs. Altice points to the camera, in one photo; and holds her arm out to the camera in another. [51]

17.      Neither Admit nor Deny.

18.      Neither Admit nor Deny.

19.      Neither Admit nor Deny.

Defendants claim Mrs. Altice was shocked and mortified at seeing the photographs of herself and Adrian.  Photographs #24 and #25 show Mrs. Altice pointing to the camera, indicating she is aware the photos are being taken.  To express shock and mortification for something she knew was happening is disingenuous and obviously misleading.

While Defendants do not outright admit, their statement in paragraph 19 imply their knowledge of the allegations that Mrs. Altice had met with students at inappropriate hours, behind closed doors, and with lights turned off.

20.      Paragraph 20 asserts a legal conclusion that requires no response.  Plaintiffs deny paragraph 20.

Mrs. Altice having a reasonable explanation and appearing genuinely remorseful is not a basis for Principal Burton to determine no investigation was necessary, especially with the widely circulated rumors about Mrs. Altice's improper behavior with students.

---

[51] Photographs #24, #25

21.    Neither admit nor deny.

22.    Deny.

SRO Barlow did not ask Cassadi about the text messages.  SRO Barlow did not believe

Cassadi, and later told Cassadi "we think other students are involved in this".[52]

23.    Deny.

Despite the nearness of the upcoming UHEA holiday, with such serious allegations as

sex between a teacher and a student, an immediate investigation was warranted.  The

administration should have gone directly to the subjects of the allegation, by talking with Mrs.

Altice and Joey as well as Joey' guardians.

The rumors and allegations were involving Mrs. Altice and Joey.  They could have had

discussions with him.  The administration already knew of improper behavior between Mrs.

Altice and Adrian.  They could have questioned Adrian.  The parents and/or guardian of these

students could have been involved.

24.    Neither admit nor deny.

25.    Neither admit nor deny.

26.    Deny.

No fight took place between Plaintiffs.  A verbal argument did take place.

Conversations were had, in early October, between Administration and Melia Shaw,

Melia's Grandmother, and Cassadi Loyola about Joey telling Melia and Cassadi he had sex with

Mrs. Altice.[53]

When Joey told Vice Principal Firmage that he had sex with Mrs. Altice, Vice Principal

Firmage responded "we thought something was going on". [54]

27.    Deny.

---

[52] *Dep. of Cassadi Loyola 38:1-10, 40:7-9*
[53] *Burton Decl. ¶ 21, 25*
[54] *Dep. of Joey Guild-Wolff 87:24-88:1, 99:15-23, 104:9-12*

Principal Burton, Vice Principal Firmage, Vice Principal Evans, Vice Principal Nielson all viewed photographs of Mrs. Altice with Adrian in a completely inappropriate setting, clearly indicating there is a relationship beyond permitted teacher student relationships. The Administration had a duty to be hyper-vigilant to protect Adrian from any improper conduct from Mrs. Altice.

28.    Neither admit nor deny.

While Plaintiffs neither admit or deny, whether Superintendent Bowles had any direct knowledge of any sexual relationship between Mrs. Altice and students, complaints of sexual relationships between teacher and student are serious enough to require the attention of the superintendent.  Superintendent Bowles is ultimately responsible for the overall operations of each school under his responsibility.

29.    Deny.

Assistant Superintendent Craig Poll, as the responsible party over human resources, Mr. Poll knew or should have known of the many complaints and allegation of misconduct by Mrs. Altice, beginning with Mrs. Altice's time at Sunset Jr. High.

These complaints and allegations range from flirting with the students, allowing students to hang out in her classroom, having her boyfriends visit her during school hours, sexual relationships with students, and child abuse.

30.    Admit.

31.    Admit.

32.    Admit.

33.    Neither Admit nor Deny.

# LEGAL STANDARD

When determining if summary judgement is warranted, the Court is required to view the facts in the light most favorably to the nonmoving party. *Doe v. School Bd. of Broward County, Fla., 604 F.3d 1250 (2010)*.

To survive a motion for summary judgement, the plaintiff does not have to prove his case.  The plaintiff however, must show "sufficient factual matter, accepted as true, to claim relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. at 768, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)*.

"If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant the summary judgment motion." *Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)*.

# LEGAL ARGUMENT

## 1.    THE DISTRICT DEFENDANTS DID VIOLATE TITLE IX.

The Plaintiffs agree with the Defendants that the Supreme Court has recognized an implied, private right of action under Title IX, *Cannon v. Univ. of Chicago, 441 U.S. 677 (1979)* for injunctive relief, *Franklin v. Gwinett Cnty. Pub. Sch., 503 U.S. 60, 78 (1992)* and for damages. *Gebster v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998)*.

Title IX implies a private right of action for monetary damages to enforce its prohibition of intentional sexual discrimination "in the form of a recipient's deliberate indifference to a teachers sexual harassment of a student" *J.M.ex rel. Morris v. Hilldale Independent School Dist. No. 1-29, 397 Fed.Appx. 450* quoting *Jackson v. Birmingham Bd. of Educ., 544 U.S. 167,173, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005)*

The Supreme Court further clarified the elements of a Title IX action: (1) an official is deliberately indifferent to sexual harassment (2) of which there is actual knowledge; (3) and the

harassment is so severe, pervasive and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Davis v. Monroe County Bd. of Educ., 526 U.S. 650, 119, S.Ct. 1661, 143 L.Ed.2d 839 (1999)*

It is also a condition of Title IX liability that the educational program in question, receive federal funds. *20 U.S.C. § 1681 (a)*.  It is not disputed the Defendants received federal funds. [55]

The Defendants have not met the burden of showing that a reasonable trier of fact could not find a difference of material fact that would rule out all other possible decisions, except for the Defendants.

The Defendants had actual knowledge of and was deliberately indifferent to harassment that was sufficiently severe, pervasive, and offensive.

Therefore, the Defendants Motion for Summary Judgment fails.

### a.  The Defendants' Had Actual Knowledge.

Mr. Swanson, Principal at Sunset Jr. High, indicated it is a known fact that Mrs. Altice had relationships with men other than her husband.[56]  These other males would come to visit Mrs. Altice at Sunset Jr. High.  The former principal at Sunset had to inform Mrs. Altice, her visitors were not welcome or allowed within the school during her prep time.[57]  Eventually, SRO Garcia was asked to get involved to stop the individuals from coming to the school to meet with Mrs. Altice.[58]

Mr. Swanson also reported Mrs. Altice associated heavily with the at-risk population of the school, and that policies had to be implemented to control access between at-risk students

---

[55] *District Defs. Mot. for Summ. J. and Mot. in Supp. footnote 78.*
[56] *Kaysville City Police Department, Incident #K13-07014 *14*
[57] *Id.*
[58] *Id.*

and teachers.  Specifically, the number of teacher assistants a teacher could have and performance standards for the teacher assistants. [59]

On March 8th, 2007 a concerned parent sent an email to the Sunset Jr. High administration talking about the inappropriate behavior of Mrs. Altice.[60]  The email contained complaints of: childish behavior (opening her mouth to show the class what she was eating), neglectful behavior (the student was feeling sick and asked Mrs. Altice if she could use the restroom, she was told to "BUZZ OFF", so the student threw up in the class trash can), cursing in class, bragging about her new tattoo, telling the parent their child is a liar, and mocking the children that she is richer than they are, and "painfully" playing favorites.  The parent complained, Mrs. Altice acts like an immature seventh grader not the teacher of seventh graders. [61]

Another email to Sunset Jr. High dated March 21st, 2007 made reference to child abuse by Mrs. Altice. [62] The parent who sent the email listened to the lpod after hearing about the incident from their child.  The recording of the class indicates that Mrs. Altice used her stapler to staple a child's arm.  When the child says "OUCH" Mrs. Altice responds, "I didn't think it would actually go in!"  The child then says, "I see why you are always in trouble".  The parent also reports they listened to the lpod from last Thursday.  It appears the administration talked to Mrs. Altice about her eating in class.  Mrs. Altice responds to the class, "I have hypoglycemia, I have to eat every so often.  I will get sick and pass out.  You want me to pass out? Well if you have a problem with that, you can get the friggin hell outta my classroom! BIG FREAKIN DEAL!!"  The parent then goes on to say this is a small problem compared to her teaching abilities.  The parent said it sounds like she is flirting with some of the students. [63]

---

[59] *Id.*
[60] *Defs. Initial Disc. 000009*
[61] *Id.*
[62] *Defs. Initial Disc. 000007-000008*
[63] *Id.*

An email dated December 6th, 2007 to the administration talks about how a child has been bullied in Mrs. Altice's classroom (including being hit in the eye by a thrown book, and being told to "shut up, nobody wants to hear from your ugly ass") while Mrs. Altice is in the classroom and when Mrs. Altice leaves the class unattended. The child has reported the abuse to the administration and teachers, but nothing has changed. [64]

On November 18th, 2009 a Mr. Close (presumably from Sunset Jr. High) passed a hand-written complaint by a parent, that Mrs. Altice was having a "relationship" with one of the school's P.E. teachers. [65]

January 21st, 2010 Jefferson Powars, Assistant Administrator at Sunset Jr. High, sent an email to James Schmidt, containing information about when discovering that several ninth graders were not where they were supposed to be, he decided to check Mrs. Altice's room. They were there.[66] The fact that the first option to finding five missing ninth graders was in Mrs. Altice's classroom indicates this was not the first time this type of thing happened.

Christy Hutchinson, a counselor at Sunset Jr. High reports she sat down with a student, who "looked pretty intense like he had something serious he needed to tell me." The student went on to tell Mrs. Hutchinson he was worried because he had sex with Mrs. Altice in her home on three occasions, and he was afraid she might be pregnant. When Mrs. Hutchinson told the student she had to get the police involved, the student denied the allegations. Mrs. Hutchinson reported it to Student Resource Officer Garcia anyway.[67] No action was taken to investigate the seriousness of the allegation.[68] No one spoke with Mrs. Altice about the allegation. Nobody spoke with the student's parents about the allegation.

---

[64] *Defs. Initial Disc. 000012*
[65] *Defs. Initial Disc. 000002*
[66] *Defs. Initial Disc. 000001.*
[67] *Investigative Report by Craig Webb Davis County Investigator with Christy Hutchinson, Subject: Christy Hutchinson, 12/20/2014*
[68] *Id.*

Mrs. Hutchinson also remembers multiple students commenting on how attractive they thought Mrs. Altice was.  Mrs. Hutchinson remembers a student complaining about the type of music Mrs. Altice would play in her class room.  The music had sexual lyrics and swearing in it. Mrs. Hutchinson took the complaint to the administration.  Mrs. Hutchinson felt Mrs. Altice was immature and needed help with professionalism and teaching skills.[69] Despite the report to the administration by a faculty member, there is no record of any investigation into the allegations, or any record the administration addressed the issue with Mrs. Altice.

On another occasion, a student Janecia Nichols, reported to Mrs. Hutchinson that Janecia had seen text messages from Mrs. Altice to her friend and fellow student Alex.  The texts were sexual in nature and included nude photographs (breasts and vagina), of who Janecia thought was Mrs. Altice.  Janecia confronted Mrs. Altice, about what she saw, before school.  Janecia reported Mrs. Altice told her nobody would believe her.  Janecia reported there were other students that witnessed the confrontation, namely Kali Jarmin, Jocelyn, and Vincent. According to Janecia, there were other students who had seen "inappropriate behavior" with Mrs. Altice and there were other male students who had Mrs. Altice's cell phone number.[70] Despite these reports to the counselor, and the administration, no record of any investigation was ever done to verify any of the allegations.  No one spoke with Alex.  No one spoke with Alex's parents.  No one spoke with Mrs. Altice.  No one followed up with the other students who reportedly say Janecia confronted Mrs. Altice with the allegation.

When Davis County Investigator Craig Webb introduced himself to Alex, (the Sunset Jr. High student Janecia was referring to in her report to Mrs. Hutchinson) and told him (Alex) that he (Craig) wanted to talk with him about his time at Sunset Jr. High.  Alex responded, "Oh, Ms.

---

[69] *Id.*

[70] *Investigative Report by Craig Webb Davis County Investigator with Janecia Nichols, Subject: Janecia Nichols, 12/11/2014*

Altice". "I have been wondering when you would be calling." Alex said his friends thought he and Mrs. Altice had a relationship.

Alex told of how, during his ninth-grade year, he racked up 25 absences to hang out with her. Alex told of how Mrs. Altice would buy or make him lunch and text him after school. Alex told of how on occasion Mrs. Altice would send him pictures of herself asking about outfits that she would wear the next day for class. Alex said it was Mrs. Altice who gave him her cell phone number to text. Alex spoke of how Mrs. Altice would take his phone, during class, and take selfies like a teenage girl. One selfie, taken in front of the classroom, was of Mrs. Altice blowing him a kiss. Alex, denied having a sexual relationship with Mrs. Altice, but said she acted more like his girlfriend waiting for him to make the next move. Alex knew that his name would be made public "if he had more" because now he was an adult.[71]

Shawna Warrick, who was an aid to a special needs student in Mrs. Altice's class at Sunset Jr. High, was in the classroom of Mrs. Altice when Mrs. Warrick observed Mrs. Altice wiggle her backside to the class while lowering a movie screen. Mrs. Warrick indicated that this would happen frequently. Mrs. Warrick also told of how Mrs. Altice would have students in her classroom when they were not supposed to be. Mrs. Warrick made a complaint of Mrs. Altice's behavior to the principal, Mr. Swanson. Mr. Swanson said he would look into it.[72]

No record has been provided of Mr. Swanson's conversation with Mrs. Altice in reference to this matter. Mrs. Warrick also reports other teachers, at Sunset Jr. High, would make comments about their concerns about how Mrs. Altice would act. One teacher commented, to Mrs. Warrick in the breakroom, upon hearing that Mrs. Altice was being transferred to Davis High, "I give this two years, and we're going to see her on TV."[73]

---

[71] *Investigative Report by Craig Webb Davis County Investigator with Alexjandro Montiel, Subject: Alexjandro Montiel, 12/20/2014*

[72] *Investigative Report by Craig Webb Davis County Investigator with Shawna Warrick, Subject: Romance In The Park, 10/13/2014*
[73] *Id.*

In August 2013, Mrs. Warrick witnessed Mrs. Altice having a picnic with a boy, at a church park behind Mrs. Warrick's house.  Mrs. Warrick, knowing the boy was not Mrs. Altice's husband, decided to take photographs of the event.  Mrs. Warrick described the picnic as "more friendly, romantic".[74]  Mrs. Warrick's husband Curtis, who took the photos, described the picnic as "touchy feely."[75]

Mrs. Warrick had the photographs, delivered to Davis High.  Mrs. Warrick called Davis High to make them aware of the photographs and spoke with Vice Principal Evans.  Mrs. Warrick followed up the conversation with Vice Principal Evans with two emails concerning the "inappropriate pictures".[76]

Davis High Principal and Vice Principals admit to receiving the photographs, even though they claim the photographs were received anonymously, and discussed the inappropriate nature of the teacher/student contact with Mrs. Altice.[77]  The student in the photographs was identified, by the administration as Plaintiff Perez-Tamayo (Adrian).  Because Mrs. Altice appeared remorseful and had a reasonable explanation, Principal Burton determined no investigation was necessary.[78] No attempt to interview Adrian was ever made, nor was any contact made with Adrian's parents to inform them of the event that Defendants claim "could be seen as inappropriate".[79]

On September 12, 2013 an email, from a parent with a child in Mrs. Altice's class, was sent to Principal Burton, and Vice Principals Firmage, Nielson, and Evans.  The email contained information about the use of profanity by Mrs. Altice.[80]  Nothing in Mrs. Altice's record shows any effort by the administration to address the issue with Mrs. Altice.

---

[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *District Defs. Mot. for Summ. J. and Mot. in Supp. ¶¶ 17-19*
[78] *Id. at ¶20*
[79] *Id. at ¶19*
[80] *Def. Initial Disc. 000129*

On September 16, 2013 another email was received by the administration with a parent's concerns about the behavior of Mrs. Altice in the classroom.  The parent addressed her concern about the professionalism of Mrs. Altice, indicating that Mrs. Altice is a flirt and a tease to the boy students at Davis High, and apparently likes the attention and giggles like a schoolgirl when the boys flirt with her.  The parent also points out that many days there are boys, not of her class, that just come to hang out.[81]  Again nothing in the record of Mrs. Altice shows that any member of the administration had any discussion with Mrs. Altice about this behavior.  This parent went as far as to request her child be removed from the classroom of Mrs. Altice.[82]

In October 2013, Davis High Administration along with SRO Barlow spoke with Maleya Shaw, a student at Davis High, Chris Shaw, the Grandmother of Maleya, and Cassadi Loyola, also a student at Davis High.  In the conversation, the Davis High Administration and SRO Barlow were told that a student (Joey), had told them of a sexual relationship with Mrs. Altice and that Cassadi had seen the texts messages to prove it.  Defendants claim because Ms. Shaw was in Hawaii and for lack of evidence, the school could not take the investigation any further.[83] Davis High administration made no attempt to contact any of the alleged parties to the investigation.  No inquiry was made to Mrs. Altice, Joey, or Joey's parents.

The morning after Mrs. Altice was arrested, Joey and Adrian were both very distraught.[84] Vice Principal Evans called Adrian's mother (Mrs. Muscolino) to inform her of Adrian's behavior.[85] Mrs. Muscolino asked what was going on.  Vice Principal Evans informed Mrs. Muscolino that there was an issue with a teacher that had been arrested.[86] Mrs. Muscolino didn't understand and asked what that had to do with her son.[87] Vice Principal Evans refused to

---

[81] *Def. Initial Disc. 000130*
[82] *Id.*
[83] *District Defs. Mot. for Summ. J. and Mot. in Supp. ¶ 23*

[84] *Dep. of Gina Muscolino 56:5-8*
[85] *Id.*
[86] *Id. at 57:13-14*
[87] Id. at 57:16-58:10

tell Mrs. Muscolino the nature of the arrest but continued to assure Mrs. Muscolino that her son

and the teacher were only good friends.[88]  This assurance was made even with all the prior

allegation of Mrs. Altice engaging in sex with students, having photographic evidence of Mrs.

Altice at the park with Adrian, and admissions of sexual assaults by Mrs. Altice.

A few days later Mrs. Muscolino spoke to Vice Principal Evans and told her she believed

her son was also involved in a relationship with Mrs. Altice and asked if Vice Principal Evans felt

she (Mrs. Muscolino) should call the police.[89] Despite all the evidence, Vice Principal Evans

discouraged Mrs. Muscolino from contacting the police.[90]

The Defendants had actual knowledge of conduct by Mrs. Altice to put the Defendants

on notice that Mrs. Altice could pose a threat of sexual assault to a student.

"The actual notice standard does not set the bar so high that a school district is not put

on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student."

*J.M.ex rel. Morris, 397 Fed.Appx. 453*, *Doe v. School Bd. of Broward County, Fla., 604 F3d

1259 (2010)* quoting *Baynard v. Malone, 268 F3d 228, 238 (4th Cir. 2001)*.  The standard is

more akin to the "totality of the circumstances".

The facts in the present case go far beyond the "actual notice" standard in *Gebster*,

where the court held "a complaint from parents of other students charging only that [the teacher]

had made inappropriate comments during class, which was plainly insufficient to alert the

principal…" *Gebster, 524 U.S. at 291*.

Here, there are more than just a few complaints about inappropriate comments.  There

are multiple emails from parents about inappropriate comments, behavior and dress - in addition

to photographic evidence of an inappropriate encounter.  There were also several direct reports

of sexual activity between Mrs. Altice and students.

---

[88] *Id.*
[89] *Id. at 91:15-92:13, 77:18-78:6, 79:1-8*
[90] *Id.*

Even if the court does not find any of the above gave the Defendant's actual knowledge, taken as a whole, the complaints show a pattern of behavior that would put the Defendants on notice of actual knowledge.

Courts have found that prior complaints about a teacher's misconduct may be sufficient to constitute actual notice, even when these prior complaints are made by nonmoving parties to the case at hand. *Doe v. School Bd. of Broward County, Fla., 604 F3d 1259 (2010)* quoting *Escue v. N. Okla. Coll., 450 F3d 1154 (10th Cir. 2006)*

In Doe v. School Board of Broward County, the court held that two prior complaints of sexual harassment, even though an investigation concluded the allegation unfounded, could not absolve the Board of potentially having actual knowledge. "Even if prior complaints by other students are not clearly credible, at some point a supervisory school official knows...that a school employee is a substantial risk to sexually abuse children." *Id.* "The simple fact that these incidents were unconfirmed and did not escalate to the violent sexual assault akin to Doe's cannot as a matter of law absolve the School Board of Title IX liability." *Id.*

A reasonable finder of fact could infer from the notices and complaints that the Defendants had actual notice. The Defendants motion fails on this issue.

**b. The Defendants are Appropriate Persons**

Actual knowledge must be had by an "appropriate person" who has the ability to halt the abuse. *Gebster, 524 U.S. at 290*.

Principals, Vice Principals, Student Resource Officers, and school counselors alike were aware of the many reports and complaints made over the educational career of Mrs. Altice.

Plaintiffs agree with Defendants that school principals and vice/assistant principals will generally meet this standard. *Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1247 (10th Cir. (1999), Doe No. 1 v. Boulder Valley Sch. Dist. No. Re-2, No. 11-CV-02107-PAB-KLM, 2012 WL 4378162, at \*4, n.2 (D. Colo. Sept. 25, 2012)*(ord. Not selected for publication) aff'd, *523 F. App'x 514 (10th Cir. 2013)*.

Plaintiffs also agree the Tenth Circuit has refused "simply to name job titles that would or would not adequately satisfy this requirement…" *Murrell , 186 F.3d 1247*.

The administration at Sunset Jr. High was aware of serious allegations regarding the behavior of Mrs. Altice.

Likewise, the administration of Davis High was aware of serious allegations regarding the behavior of Mrs. Altice.

A reasonable fact finder could determine that appropriate persons were made aware of the reports and complaints made against Mrs. Altice.

The Defendants motion fails.

### c.  The Response Of The Defendants Was Deliberate Indifference

Despite multiple complaints made by both students and faculty, no entry was ever made into Mrs. Altice's personnel record.  Reports by students (and family members) of Mrs. Altice engaging in sexual activities, never made it into her personnel record.  Photographs are delivered to the administration of Mrs. Altice having a "romantic", "touchy feely" picnic, with a student, and nothing was recorded into Mrs. Altice's personnel record.  On the contrary, Mrs. Altice received only the highest marks possible from both Sunset Jr. High and Davis High.[91] This sends the message that all the reports of misconduct by Mrs. Altice were of such little interest to the administrators that they did not warrant an entry into her personnel file, and her behavior was acceptable and condoned.

Courts have held that failure to investigate known claims, if true, amounts to deliberate indifference. *Murrell, 186 F.3d at 1248*. see also *J.M. 397 Fed.Appx. at 457*.  In *J.M.* the Court held "…it is the substance of the report, independent from the perceived lack of credibility of the informant, that was sufficient to raise the flag that begged for an investigation…" *Id at 454*.

---

[91] *Def. Initial Disc. 000005, 10, 15, 17, 19, 20, 28, 30, 71, 71, 80, 82, 83, 91, 93.*

Sunset Jr. High receives notice where a student self-reports that he had sex with Mrs. Altice three times in her home and is afraid she might be pregnant with his child.  No investigation was conducted to determine the validity of the allegation.  The student's parents were not questioned or informed their child was making such allegations.  Mrs. Altice was not questioned about the alleged behavior.

Sunset Jr. High had a student (Janecia) report Mrs. Altice has had sexual relations with another student.  No investigation was conducted into the allegations.  Nobody spoke with the student alleged to be involved with Mrs. Altice.  Nobody spoke with the parents of the alleged boy.  Nobody spoke with Mrs. Altice about the relationship or if she was sending nude photos of herself to the student.  Nobody spoke with any of the students that Janecia says witnessed the confrontation she had with Mrs. Altice.

Mrs. Warrick, a co-worker of Mrs. Altice at Sunset Jr. High, complained to Mr. Swanson, about sexualized and other improper behavior.  Mr. Swanson said he would look into it.  No record exists of this happening.

Since Sunset Jr. High administration knew that Mrs. Altice engaged in relationships with men that were not her husband, and because these men visited the school, all the above allegations would have been more credible.

Davis High received photographs of Mrs. Altice with student Adrian.  Because Mrs. Altice had a "good excuse" and "seemed remorseful", Davis High decided not to investigate any further and no report went into her personnel record. Davis High did not talk to the student involved.  Likewise, Davis High did not speak with the parents of the student involved to make them aware that their child was having a picnic with his high school teacher.

Furthermore, Davis High administration, even though they knew the photographs came from Mrs. Warrick, continued to claim they were sent anonymously – and even went so far as to withhold this knowledge from the Kaysville Police Department.  Withholding this evidence

caused the Kaysville Police to search park to park to locate Mrs. Warrick, by comparing the angle of the photographs with the background in the photographs.[92]

Davis High went so far as to discourage Adrian's parent from calling the police to report Mrs. Altice, when she felt her son was also involved with Mrs. Altice. Davis High assured Mrs. Muscolino that her son, Adrian was not involved with Mrs. Altice. This was assured despite Davis High having possession of photographs of Adrian having, what was described as a touchy feely, romantic picnic with Mrs. Altice several months prior.

When Davis High received reports from a student, and her grandmother, that Mrs. Altice had sex with a student (Joey), they chose not to talk directly with the parties involved. No conversation took place with Joey. No conversation took place with Mrs. Altice. No conversation was made with Joey's guardians to inform them of the allegations.

Rumor floated throughout the school about who Mrs. Altice was sleeping with. Joey, Adrian, and several other boys would hang out in Mrs. Altice's classroom. They would play music and be generally disruptive to the class, to the point that other parents were sending complaints to the school.

Within a week to ten days of Mrs. Altice being arrested, Davis High came to Adrian and Joey and told them, Davis High would wave all their U's and fines, and they could graduate early.[93] They were told if they did a few packets, they would be done with school a semester early.[94] Joey told Davis High, in writing, he didn't want to graduate early, but Davis High gave Joey no other option and refused to allow him to walk with his graduating class.[95]

Joey had several contracts with Davis High to monitor his performance.[96] At least one of those contracts, Mr. Porter was to have a daily check-in with Joey to make sure he was

[92] Audio Recording: Romance In The Park, Interview of Shawna Warrick, Davis County Attorney's Office, Min. 31 (Oct. 13, 2014) (on file with Davis County Attorney's Office Bureau of Investigation)
[93] *Dep. of Adrian Perez-Tamayo 88:1-13, 89:7-9, Dep. of Joey Guild-Wolff 120:6-17*
[94] *Id. 121:2-13, Dep. of Adrian Perez-Tamayo 90:3-6.*
[95] *Dep. Joey Guild-Wolff 123:3-124:14.*
[96] *Id. at 215:15-218:3.*

complying with the order, which prohibited him from associating with other select students, and attend all his classes.[97]  The daily check-ins by Mr. Porter never happened.[98]

Defendants site *Rost* to claim the districts actions were not deliberate indifference, because like *Rost,* defendants informed the student resource officer.  *Rost Ex Rel. KC v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114 (10th Cir. 2008).*  The differences between *Rost* and the case at hand are significant.  In *Rost*, the Middle School did not receive any complaints of sexual abuse.  Here, the Jr. High received several reports of sexualized behavior, from faculty and sexual abuse, by students.  The administration failed to interview the individuals clearly named in the reports.  In *Rost*, the High School only had one report of sexual assault, at which time the student resource officer was notified, the parent was notified, and the abuse was put to an end.  Here, Davis High received several complaints and notices of improper behavior and sexual abuse.  Davis High received photographs of Mrs. Altice having a picnic with a student.  Davis High, although involving the student resource officer, never contacted the student involved, or informed the students' parents.  Other reports, made directly to the administration, involved Mrs. Altice having sex with a student.  Again, no real investigation was undertaken.  It wasn't until the police informed the administration that there was an investigation about Mrs. Altice having sex with a former student of Davis High, while the student was attending Davis High, that the district took any corrective action against Mrs. Altice.  In *Rost,* no reference is made to any rumors that abuse was occurring.  Here, Plaintiffs claim rumors about Mrs. Altice and her relationships with student were widely circulated throughout the school.

A recent audit by the Utah Office of the State Auditor released November 6th, 2018, revealed a Significant lack of reporting misconduct required by law.[99]  The audit explains that

---

[97] *Id.*

[98] *Id.*

[99] *Office of the State Auditor, Performance Audit No. 18-03, A Performance Audit of Educator Misconduct Reporting and Discipline Within the Utah System of Public Education (Nov. 6, 2018)*

schools are required to report certain misbehaviors of their staff including: immoral,

unprofessional, or incompetent behavior, violations of ethical standards, or sexually explicit

conduct with a student.[100]  The audit (which only looked at 19% of eligible personnel records)

found that nearly half of the violations went unreported.[101]  The audit says the failure to report

misconduct, may have led to misconduct, by an educator in subsequent teaching jobs.[102]  Some

of the misconduct that should have been, but was not reported include sexually harassing

female students including touching the neckline of a female's shirt, slapping a student's face,

and making sexually harassing comments like expressing a desire to watch two female students

kiss in class.[103]

The audit also investigated some of the states prior reported cases and found many

sanctions to lenient.  For example, in Utah a teacher was only suspended for two years for

exchanged inappropriate written communications with a student, including communications with

sexual content.  However, an Idaho educator's license was permanently revoked for exchanging

text of personal, emotional, and sexual nature with a student.[104]

In another older Utah case, an educator received a one-year suspension for an

inappropriate peer-like relationship with a student and an unprofessional relationship with a

former student.

As a comparison, an Oregon educator's license was permanently

revoked for inappropriate conduct with students including touching and kissing on the cheek.

An Idaho educator's license was permanently revoked for exchanging texts and communicating

through FaceTime with a student where content became personal, emotional, and sexual in

nature. [105]

---

[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*

It is important to note that the audit was only able to review misconduct that made it into the educator's personnel record.  In this case, none of Mrs. Altice's vast misconduct ever made it into Mrs. Altice's personnel record.  Many of Mrs. Altice's misconduct required being sent to the Utah Professional Practices Advisory Commission (UPPAC) but Defendants failed to do so.

This audit shows the systemic problem that exists amongst our education system, that if we close our eyes, or don't acknowledge the problems, we can't be held liable.

Defendants claim they had no knowledge of any inappropriate behavior by Mrs. Altice.  This can only be true if the Defendants buried their collective heads in the sand, which **is** deliberate indifference.  It is bad policy to allow a school to "not see" any improper behavior, committed by a member of its staff, simply to claim lack of knowledge and thereby avoid liability.  The Defendants motion fails.

### d. *PLAINTIFFS ENDURED SEVERE, PERVASIVE, AND OFFENSIVE SEXUAL HARASSMENT THE DISTRICT COULD HAVE CONTROLLED*.

Defendants admit, for the purpose of this motion, that illegal sexual contact between student and teacher, meets the requirement of severe, pervasive, and offensive. *Id. at 25*.

The Defendants deliberate indifference allowed for the abuse to occur.  In *Doe*, the Court held there was a material issue as to the deliberate indifference of the school, due to prior complaints made by students that were only slightly investigated.  *Doe, 604 F3d 1260*.  Here, there are several reports of sexual abuse and improper conduct.  These reports all went under-investigated.  The actions, or lack of action, by the Schools made not only the Plaintiffs vulnerable to abuse, but all other students vulnerable to abuse, as evidenced by the conviction of Mrs. Altice of sexual abuse of the Plaintiffs and a non-plaintiff student.

Plaintiffs assert the same finding in *Murrell*, that failure to investigate claims, of this nature, constitutes deliberate indifference. *Murrell, 186 F.3d 1248*.

"The fact that it was a teacher who engaged in harassment in *Franklin* and *Gebster* is relevant.  The relationship between the harasser and the victim necessarily affects the extent to

31

which the misconduct can be said to breach Title IX's guarantee of equal access to educational

benefits…peer harassment, in particular, is less likely to satisfy these requirements than is

teacher-student harassment." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.,*

*526 U.S. 629, 653 (1999).*

 The ultimate question here is not if the Plaintiffs have proven their case, but rather

whether they are entitled to present the evidence to support their claims. *Id. at 654.* Plaintiffs

have shown a material issue of fact and law exist. Therefore, on Title IX claims, the Defendants

motion fails.

**2.  DEFENDANTS DID VIOLLATE PLAINTIFFS' CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

 **a. The District is Liable for Sexual Harassment Under the 14th Amendment Equal**

 **Protection Clause.**

 "Denials of equal protection by a municipal entity or any other person acting under color

of state law are actionable under *42 U.S.C. § 1983.*" *Murrell, 186 F.3d at 1249.* "It is well

established in this circuit that sexual harassment by a state actor can constitute a violation of

the equal protection clause." *Id.*

One form of sexual harassment that is actionable is "hostile environment harassment" *Escue v.*

*N. Okla. Coll., 450 F.3d 1146, 1157 (10th Cir. 2006).* To help determine if a "hostile

environment harassment" exists, it should be viewed from a reasonable person's perspective in

the shoes of the plaintiff. *Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118*

*S.Ct. 998, 140 L.Ed.2d 201 (1998).* *Oncale* indicates the analysis "depends on a constellation

of surrounding circumstances, expectations, and relationships which are not fully captured by a

simple recitation of the words used or the physical acts performed." *Id. at 82.*

 Here, some of the "constellation of surrounding circumstances" include the significant

age difference between Mrs. Altice and her victims, Mrs. Altice was twice the age of each of the

known victims. Mrs. Altice had to be warned to keep her boyfriends from not visiting her at

Sunset Jr. High, because everyone knew she was married. Several complaints were made

about the sexually explicit music that was played in her classroom at both Sunset Jr. High and Davis High.  At Sunset Jr. High and Davis High, complaints were made to the administration that Mrs. Altice consistently flirted with the boys.  Mrs. Altice engaged in at least one extended kissing session which included genital groping with a student in her classroom.

"Incidences of sexual harassment directed at students other than the plaintiff can be used as proof of the plaintiff's claim of a hostile...environment. *Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987)*.  Mrs. Altice asked a female student in front of the entire class who she was "getting on" these days.  Mrs. Altice systematically groomed and raped three students over the one and a half years that she was a teacher at Davis High.

"Sexually charged comments, even if not directly about gender, qualify as gender related under our case law." *Doe v. Hutchinson, 128 Fed.Appx. 829, 833 (2018)* quoting *Oshea v. Yellow Tech Servs., Inc., 185 F3d 1093, 1099 (10th Cir. 1999)*.  Here, there is a plethora of sexually charged comments (made via text messages) between Mrs. Altice and Adrian.  Defendants, like in *J.M.*, claim that because Mrs. Altice and Plaintiffs tried to keep their relationships secret, there was no evidence that any teacher or administrator knew of a "continuing, widespread, and persistent pattern of misconduct." *J.M. 397 Fed.Appx. at 456*.  Like *J.M.,* Plaintiffs assert a long historic pattern of not conducting proper investigations of known complaints of sexual harassments.

Statistics show that most sexual crime goes unreported.  The fact that Mrs. Altice was convicted of abusing three minor students, does not mean there were no other victims.

### b.  Individual Defendants Are Liable for Sexual Harassment Under the Equal Protection Clause.

*Doe* spells out how a supervisor may be held liable for the actions of an employee, namely if there is a causal connection between the actions of the supervisor and the constitutional violation. *Doe 604 F.3d at 1266*.  *Doe* further sets out how the causal connection can be met by either when a "history of widespread abuse puts the responsible supervisor on

notice of the need to correct the alleged deprivation, and he fails to do so" or when a supervisor's "improper custom or policy results in deliberate indifference to constitutional rights." *Id.* quoting *Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).*

*Doe v. Hutchinson* also spell out that liability under the Equal Protection Clause may be had if the pattern of behavior creates a "pervasively hostile environment". *Doe, 128 Fed.Appx. at 833.*

In this case, there is enough evidence, when taken on its face, to show both options of this standard are met. First, there is a long history of complaints about Mrs. Altice's behavior that would put the responsible supervisor on notice that the students could be in jeopardy of abuse. Not only did the complaints not get investigated, they did not even get recorded in her personnel record. This perpetuated the problem, allowing it to continue from Sunset Jr. High to Davis High. But even at Davis High alone, the history of Mrs. Altice allowing students to ditch their other classes to hang out in her classroom, spend prep periods and lunch breaks with students in her classroom with doors closed and lights off, being photographed at a park with one of her students, playing music with sexual lyrics during class time, hugging students in front of the entire class, extensive rumors floating about campus about Mrs. Altice being involved with students, is enough to show a history of widespread abuse that was not corrected.

Second, the administrators showed an improper custom of ignoring situations to the extent to show deliberate indifference which led to the violation of Plaintiff's constitutional right not to be sexually harassed by their teacher. The deliberate indifference grounds have been addressed in the Title IX argument

Defendants compare this case to *Jojola.* First, Mrs. Altice was a teacher at Davis High for less than two years before she was arrested. The rumors began circulating that Mrs. Altice had kissed students and had had sex with them before her first year of teaching was complete. Other teachers were making comments in front of entire classes about the improper behavior and relationships Mrs. Altice was having with students. Those rumors were all substantiated.

But even if the court finds similarity between *Jojola* and the case at hand, it is poor public police to allow an employee who has known issues of abuse to be allowed to maintain a position of special relationship of trust over our children.  Parents trust that they can send their children to school and not have them sexually abused.  If the administration knows an employee has history that could threaten the children's safety, that employee should not be placed in that position of trust.

    **c. *S*chool District and District Defendants Are Liable for a Fourteenth Amendment Due Process Violations**.

        i. **A Special Relationship Exists Between Teacher and Student**.

A special relationship may exist between a school district and a student that attends one of its schools.  *Young v. Salt Lake School Dist., 52 P.3 1230, 1233 (2002)* quoting *Pratt v. Robinson, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849, 852 (1976)*. "Indeed, it is the school district's unique relationship as a substitute for a student's parent that causes the school district's duty…". *Norton v. Canadaigua City School Dist., 208 A.D.2d 282, 285 (1995)*.

"As the Restatement puts it, by taking custody of the child, the district has "deprived [the child] of the protection [from] his parents or guardian.  Therefore, [it] … is properly required him the protection which [he has lost]"." *Young, 52 P.3 at 1233, Restatement (Second) of Torts § 320*.

Parents have an expectation, when sending their child to school, the school will protect the child from being sexually abused by the school itself.  This creates a special relationship where the school owes a duty to the child.  The Defendants motion fails.

        ii. **The "Danger Creation" Exception Does Apply.**

First, the Defendants increased the Plaintiff's vulnerability to the danger.  The Defendants failure to take any action, including failure to investigate against Mrs. Altice for multiple complaints, including reports of Mrs. Altice having sex, or "relationships" with students

and another teacher allowed the behavior to continue ultimately resulting in the sexual assaults of not only the Plaintiffs, but another student.

Second, Plaintiffs are a member of limited and specifically definable group.  Plaintiffs were students at Davis High when the abuse occurred.

Third, Defendants conduct put the Plaintiffs at substantial risk of serious, immediate and proximate harm.  Defendants' lack of investigation into the actions of Mrs. Altice meets this requirement.

Fourth, the risk was obvious and known.  The Title IX evaluation of actual notice applies here.  In brief, there is more than enough reports and complaints made to the administration, of both Sunset Jr. High and Davis High, to validate the risk was known.

Fifth, the Defendants acted recklessly in conscious disregard of the risk.  The Title IX evaluation of deliberate indifference applies here.  The Defendants lack of action across the board satisfies this requirement.  Even after the administrators knew Mrs. Altice's boyfriends would visit her on campus, and after the administrators had reports that Mrs. Altice was having sex with students, upon receiving photographic evidence of Mrs. Altice meeting with a student off campus for a "picnic" the administrators deemed this event didn't warrant an investigation, because Mrs. Altice had a "good explanation."

Sixth, such conduct, when viewed in total, shocks the conscience.  The systematic grooming and raping of students is a far cry from a teacher slapping a student referenced by Defendants.

Plaintiffs satisfy all six requirements of the "danger creation" exception, therefore Defendants' motion fails.

**3.**     **DISTRICT DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS; COMMON-LAW CLAIMS.**

   **a.  Plaintiffs' Tort Claims Should Not Be Barred For Failure To File An Undertaking.**

Section 601 states "at the time an action is filed, the plaintiff shall file an undertaking". *Utah Code § 63G-7-601 (2)* The Section also gives an amount of $300 unless otherwise ordered by the court. *Id. at (a)*.

The definition section does not give the definition of an undertaking, or any specific information about where or how to post the undertaking *Id. at 63G-7-102*.

Defendants refer to *Hansen* to show why Plaintiffs' claims should be barred. Ultimately, the court reversed the lower court's dismissal of Hansen's claims. Even though Utah Supreme Court didn't know why the lower court dismissed the claims (the order was vague), the court found "[i]n contrast to other procedural requirements of the Governmental Immunity Act, failure to comply with section 63-30-19 does not bar a suit." *Hansen v. Salt Lake Cnty., 794 P.2d 838, 840 (1990)*. (section 63-30-19 reads: At the time of filing the action the plaintiff shall file an undertaking in a sum fixed by the court, but in no case less than the sum of $300, conditioned upon payment by the plaintiff of taxable costs incurred by the governmental entity in the action if the plaintiff fails to prosecute the action or fails to recover judgment.)

Failure to file an undertaking is a curable defect in this case. Dismissing on this account would be a dismissal not on the merits. In 2017 the Utah Legislature amended the code to allow for a case to be re-filed if "the previous action failed or was dismissed for a reason other than on the merits". *Utah Code § 63G-7-403 (3) (b) (ii)*

Defendants claim this would not be applicable in this case because the action began before the 2017 amendment. This is inaccurate. The Code reads "A claimant may commence an action after the time limit described in Subsection (2)(b) if: the claimant had commenced a previous action within the time limit of Subsection (2)(b); the previous action failed or was dismissed for a reason other than on the merits; and the claimant commences the new action within one year after the previous action failed or was dismissed." *Id. at (3)(b)*. The trigger allowing the re-file is the dismissal of the action, not the original filing of the action.

**b. Claims Are Not Barred Against Individual Defendants.**

The Defendants acted with willful misconduct.  The Utah Code defines willful misconduct as "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." *Id. at 102(10)*.

Here, the Defendants failure to act, in the face of so many allegations and rumors of sexual abuse and blatant disregard for proper teacher student boundaries surpasses the "wrongful failure to act".  In addition to requesting police assistance to keep her boyfriends from visiting her on campus, Mrs. Altice had at least five separate reports of engaging in sexual relationships with students or faculty.  This is compounded with the school receiving photographic evidence of Mrs. Altice engaging in a "date" at the park with one of her students.

Mrs. Altice violated multiple policies on a regular basis (meeting with students off campus, on campus behind closed doors with lights off, kissing students on campus, hugging students on campus, playing or allowing to be played music with sexual lyrics during class, using profanity during class, texting students during school hours to arrange sexual escapades that would take place both during school hours and after, sending nude pictures of herself to students).

### c.  Tort Claims Against The District Should Not Barred.

In light of *Larsen*, Plaintiffs concede, as a matter of law, this argument fails.  The interpretation of the governmental immunity statute and case law grants the Defendants immunity as to this tort claim only.

However, this should not be the case.  Current case law dictates that regardless of the negligence or wrong doing of a school or district, as long as an assault is part of the injury, all tort claims are barred.

Plaintiffs empathize with the written conclusion of the *Larsen* case.  "It might seem counterintuitive that our law provides no civil remedy against a school district that is alleged to have negligently hired and retained a teacher who has illegal sexual contact with her minor

students. But this conclusion is, in our view, compelled by the Act and by Utah Supreme Court precedent." *Larsen v. Davis Cnty. Sch. Dist. 409 P.3d 114,125 (2017)*

"Decades ago, after reluctantly dismissing a somewhat similar case, our supreme court invited legislative action by noting its "sympath[y]" toward citizens in Larsen's position, by declaring that it is "unfortunate that any parent who is required by state law to send his or her child to school lacks a civil remedy against negligent school personnel who fail to assure the child's safety at school." *Ledfors v. Emery County School Dist.,* 849 P.2d 1162, 1167 (Utah 1993). In the intervening years, however, our legislature has not amended the Act to expressly provide for such a remedy. Under the language of the Act — under either one of two possible interpretations, and as the Act has been interpreted by our supreme court — the District is entirely immune from suit for the acts alleged here. Accordingly, the district court correctly dismissed Larsen's complaint." *Id.*

With that, Plaintiffs respectfully request the Court to deny Defendants Motion that justice may be served.